Reexamination Control No. 95/001,352
Paper Dated: February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310

FEB 23 2015

United States Court of Appeals
For The Federal Circuit

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Reexamination Control No.:  95/001,352    Confirmation No. 7638

| | |
|---|---|
| Patent No.: | 7,121,489 |
| Applicant: | John R. Ramun |
| Filed: | May 5, 2010 |
| Title: | "MULTIPLE TOOL ATTACHMENT SYSTEM" BASED ON U.S. PATENT NO. 7,121,489 GRANTED OCTOBER 17, 2006 |
| Group Art Unit: | 3993 |
| Examiner: | Peter C. English |
| Customer No.: | 28289 |

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

## PATENT OWNER'S NOTICE OF APPEAL UNDER 35 U.S.C. §§ 141 & 142

Patent Owner hereby provides notice that it appeals the final judgment of the Patent Trial and Appeal Board - which held that claims 1-21 pending in the above-identified reexamination proceeding were invalid under 35 U.S.C. § 103 - to the United States Court of Appeals for the Federal Circuit. The basis for the Board's judgment is set forth in its December 22, 2014 Decision on Request for Rehearing, its March 19, 2014 New Decision Under 37 C.F.R § 41.77(f), and its September 4, 2012 Decision on Appeal.

This Notice of Appeal is timely filed pursuant to 37 C.F.R. § 90.3, as it is filed within sixty three (63) days after the final decision of the Board following rehearing, which was issued on December 22, 2014.

Pursuant to 37 C.F.R. § 90.2, a copy of this Notice of Appeal shall be filed contemporaneously with the Board and the Federal Circuit.

Reexamination Control No. 95/001,352
Paper Dated: February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310

Respectfully submitted,

THE WEBB LAW FIRM

By:    /James G. Porcelli/
       James G. Porcelli
       Registration No. 33,757
       Attorney for Patent Owner
       420 Fort Duquesne Blvd., Ste. 1200
       Pittsburgh, PA  15222
       Telephone:  (412) 471-8815
       Facsimile:  (412) 471-4094
       E-mail:  webblaw@webblaw.com

Dated: February 20, 2015

Copy to:

Director Michelle K. Lee
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Three copies, with appeal filing fee, to:

Daniel E. O'Toole, Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Pl. N.W.
Washington, DC 20439

Copy e-filed with:

Patent Trial and Appeal Board

Reexamination Control No. 95/001,352
Paper Dated: February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appeal is being mailed, via First Class Mail, with the United States Postal Service in an envelope with sufficient postage addressed to counsel for Third Party Requestor: Ryan Massey, Esq., Harness, Dickey & Pierce, P.L.C., P.O. Box 828, Bloomfield Hills, MI 48303, on February 20, 2015.

By:   */James G. Porcelli/*
      James G. Porcelli
      Registration No. 33,757
      Attorney for Patent Owner
      420 Fort Duquesne Blvd., Ste. 1200
      Pittsburgh, PA 15222
      Telephone: (412) 471-8815
      Facsimile: (412) 471-4094
      E-mail: webblaw@webblaw.com



THE **WEBB** LAW FIRM.
Patent | Trademark | Copyright Law

One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222

P 412.471.8815
F 412.471.4094
webblaw@webblaw.com

JAMES G. PORCELLI
Attorney at Law

RECEIVED
FEB 23 2015
United States Court of Appeals
For The Federal Circuit

February 20, 2015

**_FedEx Express_**

Daniel E. O'Toole, Clerk of Court
U.S. Court of Appeals
  for the Federal Circuit
717 Madison Pl., N.W.
Washington, DC 20439

> **RE:**  **_Genesis Attachments, LLC v. Allied Erecting and Dismantling Co., Inc._**
> Appeal from the Patent Trial and Appeal Board of the United States Patent
> and Trademark Office in _Inter Partes_ Reexamination No. 95/001,352

To the Honorable Daniel E. O'Toole:

Relative to the above matter, please find enclosed for filing three copies of Allied Erecting and Dismantling Co., Inc.'s Notice of Appeal, a copy of which has been filed with the USPTO and PTAB.

Also enclosed is a check in the amount of $500.00 to cover the filing fee of the Appeal.

If you have any questions, please call.

Respectfully submitted,

James G. Porcelli

JGP:pmt

Enclosures

Intellectual Property Law Since 1845
www.webblaw.com

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 21553743 |
| **Application Number:** | 95001352 |
| **International Application Number:** | |
| **Confirmation Number:** | 7638 |
| **Title of Invention:** | MULTIPLE TOOL ATTACHMENT SYSTEM |
| **First Named Inventor/Applicant Name:** | 7,121,489 |
| **Customer Number:** | 28289 |
| **Filer:** | James Gerard Porcelli/Phyllis M. Taranto |
| **Filer Authorized By:** | James Gerard Porcelli |
| **Attorney Docket Number:** | 15804-000001/US/RXA |
| **Receipt Date:** | 20-FEB-2015 |
| **Filing Date:** | 05-MAY-2010 |
| **Time Stamp:** | 13:02:25 |
| **Application Type:** | inter partes reexam |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Notice of Appeal Filed | NoticeOfAppeal.pdf | 79578<br>1e47b17b5d8de3f10da0362b371a22162a238051 | no | 3 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 79578 |
| --- | --- |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

### New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

### National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

### New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**ORIGINAL**

**RECEIPT FOR PAYMENT**

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From: _The Webb Law Firm_
(NAME)

_Pittsburgh, PA_
(ADDRESS)

_2/24/15_
(DATE)

## NON-APPROPRIATED ACCOUNT

| | AMOUNT |
|---|---|
| Admission Fee | |
| Filing Fee  95/001,352 | 500 00 |
| | |
| | |
| Duplicate Cert. of Admission | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL** | 500 00 |

Clerk ☐
Deputy Clerk ☑ _JW 57133_
☐

Cash ☐    Check ☑    MONEY ORDER ☐

29379    107673

Standard Register ®

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**ALLIED ERECTING AND DISMANTLING CO., INC.** *et al*
**Owner/Appellant**

**v.**

**GENESIS ATTACHMENTS, LLC**
**Requester/Appellee**

**Re-Exam Control No: 95/001,352**

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the Federal Circuit was timely filed on February 20, 2015, in the United States Patent and Trademark Office in connection with the above identified *inter partes* re-examination proceeding. Pursuant to 35 U.S.C. § 143, and Fed. Cir. R. 17(b)(1), a Certified List is this day being forwarded to the Federal Circuit.

Respectfully submitted,

Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

By: _____
Kyra Abraham
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Date: April 2, 2015

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the

foregoing has been served on Appellant and Appellee this 2nd day of April, 2015,

as follows:


Patent Owner:

James G. Porcelli
THE WEBB LAW FIRM
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222

Third Party Requester:

Ryan W. Massey
Harness Dickey & Pierce PLC
P.O. Box 828
Bloomfield Hills, MI 48303


By: _Kyra Abraham_____
Kyra Abraham
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Form PTO  55  (12-80)

### U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

<u>April 2, 2015</u>

(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Inter Partes Reexamination* proceeding identified below:

### GENESIS ATTACHMENTS, LLC
Requester/Respondent

v.

### ALLIED ERECTING AND DISMANTLING CO., INC., *et al*
Patent Owner/Appellant

Appeal 2014-00006
Reexamination Control No. 95/001,352
Patent 7,121,489 B2

By authority of the

### DIRECTOR OF THE UNITED STATES
### PATENT AND TRADEMARK OFFICE

*Certifying Officer*



**Prosecution History Re-exam Control No. 95/001,352**

| Date | Document |
|------|----------|
| 05/05/2010 | REQUEST FOR INTER PARTES REEXAMINATION |
| 05/13/2010 | SUBMISSION OF FOREIGN REFERENCE |
| 05/14/2010 | NOTICE OF INTER PARTES REEXAMINATION REQUEST FILING DATE |
| 05/14/2010 | NOTICE OF ASSIGNMENT ON INTER PARTES REEXAMINATION REQUEST |
| 06/04/2010 | NON-FINAL OFFICE ACTION |
| 06/04/2010 | ORDER GRANTING REQUEST FOR INTER PARTES REEXAMINATION |
| 08/04/2010 | RESPONSE TO NON-FINAL ACTION |
| 08/25/2010 | NOTICE OF CONCURRENT PROCEEDINGS |
| 09/02/2010 | THIRD PARTY REQUESTER COMMENTS |
| 09/02/2010 | LETTER REGARDING COLOR ILLUSTRATION - REQUESTER |
| 09/24/2010 | ACTION CLOSING PROSECUTION |
| 10/25/2010 | PETITION UNDER 3 CFR 1.182 FOR ENTRY OF AMENDMENT |
| 10/25/2010 | AMENDMENT AFTER ACTION CLOSING PROSECUTION |
| 10/25/2010 | LETTER REQUESTING ENTRY OF COLOR ILLUSTRATION - OWNER |
| 11/17/2010 | THIRD PARTY REQUESTER COMMENTS |
| 02/24/2011 | ACTION CLOSING PROSECUTION |
| 02/25/2011 | DECISION DISMISSING PETITION UNDER § 1.182 |
| 03/24/2011 | LETTER REQUESTING ENTRY OF COLOR ILLUSTRATION |
| 03/24/2011 | AMENDMENT AFTER ACTION CLOSING PROSECUTION |
| 04/19/2011 | THIRD PARTY REQUESTER COMMENTS |
| 05/13/2011 | CORRESPONDENCE ADDRESS CHANGE |
| 07/15/2011 | NOTICE OF DEFECTIVE PAPER |
| 07/26/2011 | RESPONSE TO NOTICE OF DEFECTIVE PAPER |
| 09/23/2011 | RIGHT OF APPEAL NOTICE |
| 10/03/2011 | NOTICE OF APPEAL - REQUESTER |
| 11/29/2011 | APPEAL BRIEF - REQUESTER |
| 12/29/2011 | RESPONDENT BRIEF - OWNER |
| 02/03/2012 | EXAMINER'S ANSWER |
| 03/02/2012 | REBUTTAL BRIEF - REQUESTER |

**Prosecution History Re-exam Control No. 95/001,352**

| Date | Document |
|------|----------|
| 03/13/2012 | REQUEST FOR ORAL HEARING - REQUESTER |
| 03/13/2012 | NOTICE OF ENTRY OF REBUTTAL BREIF |
| 04/06/2012 | DOCKETING NOTICE |
| 05/31/2012 | NOTICE OF HEARING |
| 06/08/2012 | CONFIRMATION OF HEARING - REQUESTER |
| 06/19/2012 | REQUEST FOR ORAL HEARING - OWNER |
| 06/19/2012 | CONFIRMATION OF HEARING - OWNER |
| 09/04/2012 | DECISION ON APPEAL |
| 09/25/2012 | RECORD OF ORAL HEARING |
| 09/27/2012 | PETITION FOR EXTENSION OF TIME |
| 10/03/2012 | DECISION ON PETITION FOR EXTENSION OF TIME |
| 10/18/2012 | RESPONSE TO DECISION ON APPEAL/REQUEST TO REOPEN PROSECUTION |
| 11/15/2012 | THIRD PARTY REQUESTER COMMENTS |
| 12/06/2012 | PETITION UNDER 37 CFR 1.182 TO STRIKE REQUESTER COMMENTS |
| 12/21/2012 | OPPOSITION TO PETITION TO STRIKE REQUESTER COMMENTS |
| 01/31/2013 | ORDER REMANDING REEXAMINATION BACK TO THE EXAMINER |
| 02/12/2013 | DECISION ON PETITION |
| 02/15/2013 | EXAMINER'S DETERMINATION PURSUANT TO 37 CFR 41.77(d) |
| 03/13/2013 | PETITION FOR EXTENSION OF TIME |
| 03/14/2013 | DECISION ON PETITION FOR EXTENSION OF TIME |
| 03/15/2013 | RESPONSE TO EXAMINER'S DETERMINATION |
| 03/28/2013 | NOTICE OF SUPPLEMENTAL MAILING OF PAPERS |
| 04/10/2013 | THIRD PARTY REQUESTER COMMENTS |
| 04/24/2013 | NOTICE OF ENTRY OF RESPONSE AND REQUESTER'S COMMENTS |
| 11/08/2013 | DOCKETING NOTICE |
| 03/19/2014 | NEW DECISION UNDER 37 CFR 41.77(f) |
| 04/21/2014 | REQUEST FOR REHEARING - OWNER |
| 05/06/2014 | THIRD PARTY REQUESTER COMMENTS |
| 12/22/2014 | DECISION ON REQUEST FOR REHEARING |

Reexamination Control No. 95/001,352
Paper Dated: February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Reexamination Control No.: 95/001,352          Confirmation No. 7638

Patent No.:                    7,121,489

Applicant:                     John R. Ramun

Filed:                         May 5, 2010

Title:                         "MULTIPLE TOOL ATTACHMENT SYSTEM"
                               BASED ON U.S. PATENT NO. 7,121,489 GRANTED
                               OCTOBER 17, 2006

Group Art Unit:                3993

Examiner:                      Peter C. English

Customer No.:                  28289

Office of the General Counsel
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

## PATENT OWNER'S NOTICE OF APPEAL UNDER 35 U.S.C. §§ 141 & 142

Patent Owner hereby provides notice that it appeals the final judgment of the Patent Trial and Appeal Board - which held that claims 1-21 pending in the above-identified reexamination proceeding were invalid under 35 U.S.C. § 103 - to the United States Court of Appeals for the Federal Circuit. The basis for the Board's judgment is set forth in its December 22, 2014 Decision on Request for Rehearing, its March 19, 2014 New Decision Under 37 C.F.R § 41.77(f), and its September 4, 2012 Decision on Appeal.

This Notice of Appeal is timely filed pursuant to 37 C.F.R. § 90.3, as it is filed within sixty three (63) days after the final decision of the Board following rehearing, which was issued on December 22, 2014.

Pursuant to 37 C.F.R. § 90.2, a copy of this Notice of Appeal shall be filed contemporaneously with the Board and the Federal Circuit.

Reexamination Control No. 95/001,352
Paper Dated:  February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310


Respectfully submitted,

THE WEBB LAW FIRM


By:      /James G. Porcelli/ _____
         James G. Porcelli
         Registration No. 33,757
         Attorney for Patent Owner
         420 Fort Duquesne Blvd., Ste. 1200
         Pittsburgh, PA  15222
         Telephone:  (412) 471-8815
         Facsimile:  (412) 471-4094
         E-mail:  webblaw@webblaw.com

Dated: February 20, 2015



Copy to:

Director Michelle K. Lee
United States Patent and Trademark Office
Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314


Three copies, with appeal filing fee, to:

Daniel E. O'Toole, Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Pl. N.W.
Washington, DC 20439


Copy e-filed with:

Patent Trial and Appeal Board

Reexamination Control No. 95/001,352
Paper Dated:  February 20, 2015
In Reply to USPTO Correspondence Dated December 22, 2014
Attorney Docket No. 2005-101310

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appeal is being mailed, via First Class Mail, with the United States Postal Service in an envelope with sufficient postage addressed to counsel for Third Party Requestor: Ryan Massey, Esq., Harness, Dickey & Pierce, P.L.C., P.O. Box 828, Bloomfield Hills, MI 48303, on February 20, 2015.

By:    */James G. Porcelli/*
       James G. Porcelli
       Registration No. 33,757
       Attorney for Patent Owner
       420 Fort Duquesne Blvd., Ste. 1200
       Pittsburgh, PA  15222
       Telephone:  (412) 471-8815
       Facsimile:  (412) 471-4094
       E-mail:  webblaw@webblaw.com



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,352 | 05/05/2010 | 7,121,489 | 15804-000001/US/RXA | 7638 |

28289        7590        12/22/2014
THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222

| EXAMINER |
|---|
| ENGLISH, PETER C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/22/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

GENESIS ATTACHMENTS, LLC
Requester, Respondent

v.

ALLIED ERECTING AND DISMANTLING CO., INC., et al.
Patent Owner, Appellant

_____

Appeal 2014-001006
*Inter partes* Reexamination Control 95/001,352
Patent US 7,121,489 B2
Technology Center 3900

_____

*Before* JEFFREY B. ROBERTSON, DANIEL S. SONG and
RAE LYNN P. GUEST, *Administrative Patent Judges.*

SONG, *Administrative Patent Judge*

DECISION ON REQUEST FOR REHEARING

The Patent Owner filed a Request for Rehearing Pursuant to 37 C.F.R.
§ 41.79 requesting reconsideration of the New Decision Under 37 C.F.R.
§ 41.77(f) mailed March 19, 2014 (hereinafter "New Decision") which
rejects claims 1-21 of the '489 patent.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

We DENY the Patent Owner's request.

## ANALYSIS

The Patent Owner asserts that the New Decision is unsupported by substantial evidence and contrary to law because:

1. The articulated reason for combining Ogawa with Caterpillar in order to allow the blades of Caterpillar "to be opened wider" lacks rational underpinnings (Req. 2–4);

2. The articulated reason for combining Ogawa with Caterpillar in order to "minimize movement of the object[]" lacks rational underpinnings (Req. 2, 5–7);

3. The Board improperly dismissed statements of the Requester regarding the asserted "long-felt need" (Req. 2, 7–9);

4. The Board improperly dismissed evidence of copying (Req. 2, 9); and

5. The Board's conclusion of obviousness was based on impermissible hindsight reconstruction (Req. 2, 9–10).

*Argument 1*

The Patent Owner asserts that the articulated reason for combining Ogawa with Caterpillar in order to "allow the blades to be opened wider" lacks rational underpinnings because a simpler way of making the blades of Caterpillar open wider is to make the movable jaw smaller as shown in Patent Owner's modified illustration of Fig. 3 of Caterpillar (*see* Req. 3-4).

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

We initially note that the rationale of the Board was initially set forth
in Appeal 2012-007030 (*see* Decision mailed September 4, 2014 (hereinafter
"the '7030 Decision") 30) and was quoted and further explained in the New
Decision in response to the Patent Owner's arguments that the Board failed
to articulate a reason with rational underpinnings (New Decision 13-14).

As to the Patent Owner's argument regarding making the movable jaw
smaller (Request 3-4), we observe that the existence of another alternative
solution that would allow for wider opening does not negate the fact that
such wider opening is attainable by combining the teachings of Caterpillar
and Ogawa, or diminish the conclusion that such combination would have
been obvious to one of ordinary skill in the art. As also explained,

> The record also establishes that it is well known in the art to
> provide tools with jaws wherein only one of the jaws is
> movable and the other is fixed (*see, e.g.,* '7030 Decision,
> FF2 E; FF5 A) or wherein both of the jaws are movable (*see,
> e.g.,* FF3 A; '7030 Decision, FF4 A).

(New Decision 13; *see also* New Decision 15-16).

Moreover, "the prior art itself clearly demonstrates that there exists a market
for tools in which both of the jaws are movable (*see, e.g.,* FF3 A; '7030
Decision, FF4 A)." (New Decision 14). Thus, the Patent Owner's argument
based on identification of an alternative solution is unpersuasive.

*Argument 2*

The Patent Owner asserts that the articulated reason for combining
Ogawa with Caterpillar to "minimize movement of the object as it is
grasped" lacks rational underpinnings because if "[t]he object is initially in
contact with the fixed stationary blade and the moving blade alone . . .

3

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

pivot[s] to contact the object," then "[t]he object does not move at all when it
is grasped." (Req. 5-7, 14). This argument was also previously addressed
(New Decision 16-17). Specifically, the Board stated:

> If only one of the blades is movable, the movable blade must
> displace the object until it abuts against the non-movable blade
> in order to grasp the object. *Whereas such movement of the*
> *object may be reduced by first abutting the non-movable blade*
> *against the object prior to moving the movable blade, . . . such*
> *positioning may not be attainable or desirable in all*
> *circumstances.*

(New Decision 17, emphasis added).

Moreover, as noted above with respect to *Argument 1*, the record is clear that
jaws, wherein one or both of the blades move, are well known in the art.
Thus, the Patent Owner's argument is unpersuasive.

### Argument 3

The Patent Owner argues that in the New Decision, the Board
improperly dismissed statements of the Requester regarding the asserted
"long-felt need." (Req. 7–9). However, this assertion is meritless because
the Board already addressed this argument in detail (New Decision 21-22).

### Argument 4

The Patent Owner argues that the Board improperly dismissed
evidence of copying, which includes the fact that the Requester was found
liable to the Patent Owner for trade secret misappropriation and that the
"misappropriated trade secrets of the Patent Owner used by Genesis to
design their jaw set were some of the design details used for the internal

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

elements of the jaw set that is the subject of the present reexamination proceeding." (Req. 9).

The trade secret argument was already addressed by the Board in the New Decision, which explained that such vague assertions regarding use of some unidentified "internal elements" of the jaw set do not persuasively establish nexus between the misappropriated trade secrets and the claimed invention (New Decision 22-23). The Patent Owner also argues in the Request for Rehearing that "from a cursory inspection, it can be seen that there are many similarities between the designs disclosed in the Genesis '718 patent and the design claimed in the Patent Owner's patent" (Req. 9). However, such vague assertions of "many similarities" are inadequate to demonstrate copying which

> may be demonstrated either through internal documents, *see Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1196-97 (Fed. Cir. 2003); direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a virtually identical replica, *see Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285 (Fed. Cir. 2000); or access to, and substantial similarity to, the patented product (as opposed to the patent), *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985), *overruled on other grounds by, Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (en banc).

*Iron Grip Barbell Co. Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

*Argument 5*

Finally, the Patent Owner asserts that the Board's conclusion of obviousness was based on impermissible hindsight (Req. 9–10). However,

> Any judgment on obviousness is in a sense necessarily a reconstruction based on hindsight reasoning, but so long as it takes into account only knowledge which was within the level of ordinary skill [in the art] at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, such a reconstruction is proper.

*In re McLaughlin*, 443 F.2d 1392, 1395 (CCPA 1971).

The Board's conclusion of obviousness set forth in the New Decision derives from proper consideration of the knowledge disclosed in the prior art of record and does not include knowledge gleaned only from the '489 patent. Reasons with rational underpinnings that support this conclusion are also set forth. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

## CONCLUSION

The Patent Owner's request to modify the New Decision is DENIED.

## <u>DENIED</u>

Pursuant to 37 C.F.R. § 41.79(d), this decision is final for the purpose of judicial review. A party seeking judicial review must timely serve notice on the Director of the United States Patent and Trademark Office. *See* 37 C.F.R. §§ 90.1 and 1.983.

6

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2


cc:

Patent Owner:
THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222

Third Party Requestor:
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 828
BLOOMFIELD HILLS, MI 48303

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,352 | 05/05/2010 | 7,121,489 | 15804-000001/US/RXA | 7638 |

28289          7590          03/19/2014

THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222

| EXAMINER |
|---|
| ENGLISH, PETER C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/19/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

————————————

GENESIS ATTACHMENTS, LLC
Requester, Respondent

v.

ALLIED ERECTING AND DISMANTLING CO., INC., et al.
Patent Owner, Appellant

————————————

Appeal 2014-001006
*Inter partes* Reexamination Control 95/001,352
Patent US 7,121,489 B2[1]
Technology Center 3900

————————————

*Before* JEFFREY B. ROBERTSON, DANIEL S. SONG and
RAE LYNN P. GUEST, *Administrative Patent Judges*.

SONG, *Administrative Patent Judge*

NEW DECISION UNDER 37 C.F.R. § 41.77(f)

---

[1] Patent US 7,121,489 B2 (hereinafter "'489 patent") issued October 17, 2006 to Ramun.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

## STATEMENT OF THE CASE

The '489 patent of the present appeal was the subject of *inter partes* reexamination Appeal 20120-007030 (hereinafter "'7030 Appeal") for which the Board's decision was mailed on September 4, 2012 (hereinafter "'7030 Decision").[2] In the '7030 Appeal, the Requester appealed the Examiner's patentability determinations of claims 1-21 and the Examiner's decision to not adopt 9 rejections proposed by the Requester. The Board affirmed the Examiner's decision to not adopt 7 of the 9 proposed rejections, reversed the Examiner's decision not to adopt a proposed obviousness rejection of claims 1-3, 13-14 and 17-20, and remanded the case to the Examiner for further consideration of the remaining proposed rejection for dependent claims 4-12, 15, 16 and 21 ('7030 Decision 36-37). Pursuant to 37 C.F.R. § 41.77(a)-(b), the decision to reverse the Examiner's patentability determination was designated as a "new ground of rejection." (*Id.*).

The Patent Owner opted to reopen prosecution pursuant to 37 C.F.R. § 41.77(b)(1) in its Response to Decision on Appeal on October 18, 2012 (hereinafter "Resp. to Decision"), submitting arguments and amendments to independent claims 1, 7, 17-19 to recite that the bridge housing is separate from the movable blades (Resp. to Decision 3-7). Independent claims 20 and 21 were not amended. The Patent Owner also submitted a declaration from the inventor Mr. Ramun (hereinafter "Second Decl. of Ramun") with exhibits in support of its arguments. The Requester

---

[2] The '7030 Decision was issued by the Board of Patent Appeals and Interferences which has since been renamed as the Patent Trial and Appeal Board.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

filed its Requester's Comments on the Patent Owner Response on November 15, 2012 with a declaration from Mr. Jacobson (hereinafter "Decl. of Jacobson") and exhibits in rebuttal. The Board granted the request to reopen prosecution on January 31, 20013 in the Order Remanding Inter Partes Reexamination Under 37 C.F.R. § 41.77(d).

The Examiner issued a Determination Pursuant to 37 C.F.R. § 41.77(d) on February 15, 2013 (hereinafter "Determination") stating that the Patent Owner has not overcome the New Ground of Rejection of the '7030 Decision and adopting the rejection remanded for reconsideration, thereby determining that all of the claims 1-21 are unpatentable (Determination 9-10). The Patent Owner filed Comments in Response to the Examiner's Determination on March 15, 2013 (hereinafter "PO Comm.") arguing patentability of the claims. The Requester filed Third Party Requester's Comments on the Patent Owner's Response to Examiner's Determination on April 10, 2013 (hereinafter "Req. Comm.") in support of rejecting the claims. The case has been returned to the Board for reconsideration and a New Decision under 37 C.F.R. § 41.77(f).

As discussed *infra*, the Patent Owner's amendments, arguments and submitted evidence are inadequate to establish patentability of claims 1-21. Hence, claims 1-21 remain rejected as follows:

1.    Claims 1-3, 13-14 and 17-20 stand rejected under 35 U.S.C. § 103 as obvious over Caterpillar in view of Ogawa.

2.    Claims 4-12, 15, 16 and 21 stand rejected under 35 U.S.C. § 103 as obvious over Caterpillar in view of Ogawa and Clark.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

In rejecting claims 1-21, we incorporate by reference the '7030
Decision in its entirety but reproduce and refer to portions thereof *infra*.

## FINDINGS OF FACT

Findings of Fact 1, 3 and 5 are reproduced herein below for
convenience ('7030 Decision 3-5, 14-35).

*The Invention*

FF1.  A.  The '489 patent is directed to a tool attachment system which
allows different tools such as hydraulically actuated metal cutting shears,
concrete crushers, and grapples that have movable jaws to be attached to
equipment such as backhoes (Abstract; col. 1, ll. 20-26).

  B.  Figure 2 of the '489 patent is reproduced below.



FIG. 2

Figure 2 of the '489 patent reproduced above illustrates a side view of
a shear 10' including a first blade 12 and a second blade 14 pivotally
connected at a main pin 16 to a universal body 18' (col. 3, ll. 55-56; col. 5, ll.
57-59; col. 6, ll. 18-23; Fig. 2).

4

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

C.   The specification of the '489 patent states "[a] bridge housing 48
surrounds the main pin 16 and is utilized for quickly and easily attaching the
main pin 16 and the associated jaw set to the universal body 18." (Col. 6, ll.
56-59).

D.   Figure 57 of the '489 patent is reproduced below.



FIG. 57

Figure 57 of the '489 patent reproduced above illustrates a perspective
view of the quick release system including bridge housing 48 that is
positioned against the receiving member 42 and secured thereto by keeper
pins 50 which are inserted through the apertures 52 of the bridge housing 48
and the receiving member 42 (col. 5, ll. 46-47; Certificate of Correction
dated October 17, 2006, inserting originally filed paragraph [0081]; Fig. 57).

E.   The specification of the '489 patent teaches that the advantage of
the claimed invention is that "the outer bearing structure surrounding the
main pin 16 will remain affixed even when the tool unit is removed from the
universal body 18.  This provides the advantage that the bearing or rotating
surfaces will be protected from dirt and grit even when the tool unit is
disassembled." (Col. 6, l. 67-col. 7, l. 5).

F.   Figures 8 and 9 of the '489 patent are reproduced below.

5

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2



Figure 8 of the '489 patent reproduced above is a partial sectional view of the shear and the components of the bridge housing 48 with the main pin 16 received therein while Figure 9 illustrates the disassembly of the tool unit (col. 4, ll. 1-6; Fig. 8).

G.   In discussing the bridge housing 48, the specification of the '489 patent states that "the first end 400 of the bridge housing 48 has a sleeve 408 between the two opposing plates 405, 406," and discloses that the sleeve 408 has a support surface 410 (not shown) (Col. 7, ll. 27-30; see also col. 7, ll. 38-40).   Hence, the specification and the illustration of Figure 8 of the '489 patent indicates that the "bridge housing" is an assembly of components.

*Ogawa*[3]

FF3.   A.   Ogawa discloses a convertible bucket attachment for excavation and clasping (Abst.).   Figure 4a of Ogawa is reproduced below:

---

[3] U.S. Patent No. 4,283,866 issued August 18, 1981 to Ogawa.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2



FIG. 4a

Figure 4a reproduced above shows a side view of the bucket attachment in according to one embodiment including bucket proper 1 and a sub-bucket 2 that are pivotally engaged by pin 5' on arm 11 so that both of the buckets pivot upon actuation of a cylinder actuator 13 (col. 2, l. 59-col. 3, l. 10; Fig. 4a).

B. In discussing a prior art bucket apparatus, Ogawa states that "provision of a cylinder actuator between the back and the fore bucket has imposed a substantial limitation on the distance of range in which both bucket members can be operatively moved relative to each other, and prevented the range of angular movement of the members from being as wide as 180° as in the embodiment of the invention." (Col. 1, ll. 49-55).

C. Figures 6 and 7 of Ogawa are reproduced below:



FIG. 6                FIG. 7

7

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Figure 6 shows a side view while Figure 7 shows a plan view, respectively, of a modified embodiment of a bucket attachment including bucket proper 1 having stay 4, sub-bucket 2, pin 5', sub-link members 14, upper link members 16, and bracket 9 which is used to secure the bucket portion to the arm 11 (col. 3, l. 62-col. 4, l. 9). Stay 4 of bucket proper 1 is not attached to bracket 9 (Figs. 6 and 7).

*Caterpillar*[4]

FF5.    A.    Caterpillar discloses a demolition shear such as a scrap metal shear (Pg. 5). Figures 1 and 2 of Caterpillar are reproduced below.



[4] German reference DE 297 15 490 U 1 dated August 29, 1997 (hereinafter "Caterpillar"; citations to English translation of record).

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Figure 1 of Caterpillar reproduced above shows a lateral view of a scrap metal shear 10 with its jaws removed (Pg. 5; Fig. 1). Figure 2 of Caterpillar reproduced above shows a frontal, partial cross-sectional view of the scrap metal shear of Figure 1 (Pg. 5; Fig. 2).

B. Caterpillar discloses that scrap metal shear 10 has a housing 11 to which first jaw 13 and second jaw 14 are attached, the second jaw being pivotally mounted via swivel bearing 15 and operable via a hydraulic cylinder 16 (Pg. 6; Figs. 1 and 2).

C. Figure 1 of Caterpillar illustrates that when the jaws of the scrap metal shear 10 is removed, the swivel bearing 15 remains pivotally connecting the first jaw 13 and the second jaw 14 together (Fig. 1).

D. Caterpillar discloses that the first jaw 13 includes a pair of opposing lateral walls 13a having holding fixtures 19 and 20 which are used to attach the first jaw 13 to the housing 11, the holding fixture 19 including grooves 22 with receptacle section 22b in the lateral wall 13a for receiving a pin 21, 21a, and holding fixture 20 including a bore hole 23 in the lateral wall 13a for receiving a locking pin 25 (Pg. 6-7).

E. Figure 1 of Caterpillar also illustrates that the swivel bearing 15 is mounted via lateral walls 13a (Fig. 1).

F. Figures 1 and 2 of Caterpillar further illustrates that the lateral walls 13a are distinct structures of the first jaw 13 made as a bracket plate that is attached transversely spaced from the remainder of the first jaw which includes the teeth portion (Figs. 1 and 2).

G. Caterpillar teaches that the holding fixtures 19 and 20 with grooves 22 and bore hole 23 in the lateral walls 13a allow for disassembly

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

"in [a] simple fashion" by merely pulling the locking pin 25 out of the bore

holes 23." (Pg. 7).

THE '7030 DECISION

In the '7030 Decision, the Board reversed the Examiner's refusal to

adopt a proposed rejection of claims 1-3, 13, 14 and 17-20 for being obvious

over the combination of Caterpillar and Ogawa (*see generally*, '7030

Decision 28-32).  The Board found that Caterpillar

> disclose[s] a "bridge housing" as recited by the claims in that
> the side walls 13a are distinct, discernible structures, and the
> side walls 13a serves the function of allowing the jaws to "be
> removed from or attached to the body without the need to
> disengage or engage the main pivot pin from the blades, thereby
> providing a quick release system for attaching the tool set to the
> body" as recited by the claims and described in the
> Specification of the '489 patent (FF5 A-G).

('7030 Decision 27).

The Board also found that Caterpillar "teaches one of ordinary skill in

the art the desirability of simplifying disassembly of jaws, and discloses a

mechanism for doing so in the lateral walls 13a having holding fixtures 19

and 20 (FF5 A, D-G)." ('7030 Decision 29; FF5 A, D-G).  The Board

further found that Ogawa establishes that providing two movable blades are

known, and that Ogawa "also specifically discloses the provision of wide

range of angular movement (FF3 A)." ('7030 Decision 30; FF3 A).

Based on the above findings, the Board concluded that the Requester

has articulated a rational reason for modifying Caterpillar, that is, to make

the blade 13 pivotable about the existing pivot pin 15 so as to allow the

blades to be opened wider ('7030 Decision 30).  The Board further

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

articulated that pivotable mounting of the first blade 13 in Caterpillar would "allow for minimizing movement of the object grasped since the object would be grasped on opposing sides thereof by moveable blades rather than a single moving blade which applies grasping force from only one side until the object abuts the non-movable blade." (*Id.*). The Board concluded that:

> [I]t would have been obvious to one of ordinary skill in the art to apply the teaching of Ogawa with respect to articulation of both grasping members and wide range of angular movement to thereby modify Caterpillar so that the first jaw 13 with the teeth thereon also pivots about the swivel bearing 15 like second jaw 14, while also maintaining the simplified mounting and disassembly via the lateral walls 13a with their holding fixtures 19, 20 so that the jaws can be disassembled in a simple manner as specifically taught therein (FF5 D).  In our view, it would be apparent and within the skill of one of ordinary skill in the art that such modification to the device of Caterpillar may be attained, and within his/her skill to, for example, provide another mounting structure like the lateral walls 13a, or alternatively, making the teeth portion of the first jaw 13 to be separately mounted to the swivel bearing 15, as taught by Ogawa.  While the above suggested modification to Caterpillar would entail design and structural changes, we observe that it is not necessary that the inventions of the references must be physically combinable, without change, to render obvious the invention under review.  *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983); *see also In re Keller*, 642 F.2d 413, 425 (CCPA 1981)."

('7030 Decision 30-31).


AMENDED CLAIMS

Representative independent claim 1, as amended after the '7030 Decision, reads as follows (Resp. to Decision 3):

11

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

> 1. (Twice Amended) A tool set for coupling to the receiving member of a body having hydraulically powered blades, the tool set comprising:
> a pair of movable blades pivoted together about a main pivot pin;
> a bridge housing [engaging]encasing the main pivot pin, wherein the bridge housing is separate from the movable blades;
> wherein the blades are movable relative to the bridge housing;
> wherein the bridge housing with the main pivot pin intact therein is adapted to be detachably connected to the receiving member and the pair of movable blades is adapted to be detachably connected to at least one hydraulic cylinder such that the tool set may be removed from or attached to the body without the need to disengage or engage the main pivot pin from the blades, thereby providing a quick release system for attaching the tool set to the body; and
> wherein the bridge housing has an aperture adapted to be mated with a matching aperture of the receiving member through a removable keeper pin to secure the bridge housing to the receiving member.

Independent claims 7 and 17-19 have also been amended to recite that the bridge housing is separate from the movable blades, but independent claims 20 and 21 were not amended (Resp. to Decision 3-9).


ANALYSIS

The Examiner states that the Patent Owner has failed to overcome the New Ground of Rejection as articulated by the Board in the '7030 Decision (Determination 9). The Patent Owner disagrees for various reasons (PO Comm. 2) which we address *infra.*

12

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

*Articulated Reason*

The Patent Owner argues that the Board failed to articulate a reason with rational underpinnings to support the obviousness conclusion and, thus, engaged in impermissible hindsight (PO Comm. 2). The Patent Owner asserts that there is no apparent reason to modify Caterpillar because there is nothing in the record which establishes that Caterpillar was inadequate for any intended purpose and there is no evidence establishing "'demands known to the design community or present in the marketplace.'" (PO Comm. 4) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007)).

Obviousness analysis requires a determination that "there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue" which is substantiated by an articulated reasoning with rational underpinnings. *KSR*, 550 U.S. at 418. The bridge housing of the '489 patent allows the tool to be removed or attached without disengaging or engaging the main pivot pin, thereby protecting the rotating surfaces from dirt and grit when the tool is removed (FF5 C, E). However, providing a bridge housing is not new and is disclosed by Caterpillar, which also specifically teaches that the described device allows for disassembly "'in [a] simple fashion' by merely pulling the locking pin 25 out of the bore holes 23." (FF5 A-G). The record also establishes that it is well known in the art to provide tools with jaws wherein only one of the jaws is movable and the other is fixed (*see, e.g.*, '7030 Decision, FF2 E; FF5 A) or wherein both of the jaws are movable (*see, e.g.*, FF3 A; '7030 Decision, FF4 A). Hence, the Board concluded that "it would have been obvious to . . . apply the teachings of Ogawa with respect to articulation of both grasping members and wide

13

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

range of angular movement to thereby modify Caterpillar" to allow the
blades to be opened wider or to minimize movement of the object as it is
grasped ('7030 Decision 30). Correspondingly, contrary to the assertion of
the Patent Owner, reasons with rational underpinnings have been articulated.

The Patent Owner's arguments based on the assertion that there is lack
of evidence regarding "demands" to modify the device of Caterpillar or
regarding deficiencies in the same are also unpersuasive. As noted, the prior
art itself clearly demonstrates that there exists a market for tools in which
both of the jaws are movable (*see, e.g.*, FF3 A; '7030 Decision, FF4 A). In
this regard, the Requester has submitted further evidence in Rafn '242,[5]
LaBounty '493,[6] and LaBounty '569[7] as rebuttal to the Patent Owner's
assertions which "clearly support the conclusion that for some applications
within this art, it is desirable to make both blades movable." (Req. Comm.
6; Decl. of Jacobson ¶¶ 9-11). In addition to the desirability of allowing
disassembly in a simple fashion (FF5 A), the evidence of record further
suggests the advantage and desirability of allowing for wide openings (FF3
B). Thus, the evidence suggests to one of ordinary skill familiar with all of
the pertinent prior art to combine these references to attain the suggested
benefits therein, regardless of the absence of explicit disclosure of any
deficiency in the Caterpillar device. *See KSR*, 550 U.S. at 417 ("[I]f a
technique has been used to improve one device, and a person of ordinary
skill in the art would recognize that it would improve similar devices in the
same way, using the technique is obvious unless its actual application is

---

[5] U.S. Patent No. 5,474,242 issued December 12, 1995 to Rafn.
[6] U.S. Patent No. 4,838,493 issued June 13, 1989 to LaBounty.
[7] U.S. Patent No. 5,044,569 issued September 3, 1991 to LaBounty.

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

beyond his or her skill."); *see also Custom Accessories*, *Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) ("The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art."); *In re Antle*, 444 F.2d 1168, 1171-72 (CCPA 1971). Correspondingly, we disagree with the Patent Owner that there is an evidentiary deficiency in the record.

The Patent Owner also argues that to achieve wider opening, Ogawa utilizes a complex linkage arrangement and application to the device of Caterpillar that requires "modification of the housing 11 . . . to make room for the links," and "add[s] complexity and a potential source of weakness, diminishing the original rugged design." (PO Comm. 4-5). Firstly, we observe that the Patent Owner does not present persuasive evidence to establish that the level of complexity is so high that it would be beyond the skill of a person of ordinary skill in the art to modify Caterpillar accordingly. To the contrary, the prior art of record demonstrates that the skill level in the art is high. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001); *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573 (Fed. Cir. 1984). In this regard, we further note that LaBounty '493 submitted by the Requester in rebuttal to the Patent Owner's assertions discloses that "in some instances, the brace 27 may be replaced by an extensible connection 27.1 illustrated in phantom lines in Figure 6 and may be in the form of a hydraulic cylinder so that the orientation of the lower jaw 17 may be adjustable." (LaBounty '493, col. 3, ll. 23-27; Fig. 6; *see also* Req. Comm. 5; Decl. of Jacobson ¶ 10). Thus, the prior art of record generally, and LaBounty '493 specifically, demonstrates not only the high level of skill of

15

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

one of ordinary skill in the art as to the ability to alter jaws but also demonstrates that implementing a jaw so that one or both blades are movable is a design choice that is well within the skill of one of ordinary skill.

Furthermore, even if the Patent Owner's assertion that addition of links introduces disadvantages because it would add complexity and potential source of weakness is true, such disadvantages does not necessarily render such combination improper. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) ("a given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine."); *see also Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n. 8 (Fed. Cir. 2000) ("The fact that the motivating benefit comes at the expense of another benefit, however, should not nullify its use as a basis to modify the disclosure of one reference with the teachings of another.  Instead, the benefits, both lost and gained, should be weighed against one another.").  In our view, one of ordinary skill in the art would take such factors into consideration and conclude that for certain applications, the benefits of allowing for wide opening and minimizing movement of the grasped object would outweigh the potential disadvantages asserted by the Patent Owner.  The Patent Owner has not provided persuasive evidence or arguments to the contrary.

The Patent Owner also argues that the benefit of minimizing movement of the object as articulated in the '7030 Decision as another reason for combining the references already exists in Caterpillar without further modification (PO Comm. 5).  According to the Patent Owner,

16

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

because the device of Caterpillar includes "a rotatable connection head 12 that may be rotated about an axis A" which is connected to an articulating hydraulic excavator, there is no need for dual movable jaws. (PO Comm. 5).

The Patent Owner misapprehends the reason as articulated by the Board which was that the movable blades "allow for minimizing movement of the object grasped since the object would be grasped on opposing sides thereof by moveable blades rather than a single moving blade which applies grasping force from only one side until the object abuts the non-movable blade." ('7030 Decision 30). Thus, the advantage of the movable blades stems from being able to grasp the object positioned in the opening between the two blades by progressively reducing the opening through the simultaneous movement of the two blades. If only one of the blades is movable, the movable blade must displace the object until it abuts against the non-movable blade in order to grasp the object. Whereas such movement of the object may be reduced by first abutting the non-movable blade against the object prior to moving the movable blade, and such positioning may be facilitated by the articulating arm, such positioning may not be attainable or desirable in all circumstances. The rotatable connection head of Caterpillar, while allowing for angular positioning of the blades, does not directly address the aspect of the positioning discussed above.

The Patent Owner further argues that the reason articulated by the Requester for the desirability of the combination, that is, to allow exertion of a greater force, "appears to be impossible" in view of the fact that Ogawa's device has various intermediate linkages (PO Comm. 5-6). However, this rationale was proffered by the Requester, not by the Board. The Board did

17

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

not adopt this rationale in entering the rejection. Hence, this argument of the Patent Owner is moot.

The Patent Owner notes that it has "submitted Attachments E-G showing a number of speculative combinations, including View 2(A), none of which was believed to be obvious or operative." (PO Comm. 6; Second Decl. of Ramun, Attachments E-G). According to the Patent Owner, the Requester's Modified View 2(A) is deficient to attain the benefits articulated as the basis for the combination (PO Comm. 7). However, we observe that Modified View 2(A) was submitted by the Requester (Decl. of Jacobson ¶14) in response to the numerous attachments in the Second Declaration of Ramun, and the Board did not rely on the Modified View 2(A) in its entry of the New Ground of Rejection.

To any extent that the various views set forth in the Declaration of Ramun (and in the Declaration of Jacobson) may be pertinent, as conceded by the Patent Owner, the various combinations are merely speculative. We also observe that the Patent Owner's arguments are based on bodily incorporating the teachings of Ogawa into the device of Caterpillar (*see generally*, Second Decl. of Ramun ¶¶ 13-31). In this regard, asserting inoperability, the Patent Owner attacks Requester's Modified View 2(A) as if it is an actual implementation of the combination based on engineering drawings that are sized to scale (*see* PO Comm. 6-7). However, such bodily incorporation using drawings of a patent is not the proper inquiry. *See In re Nievelt*, 482 F.2d 965, 968 (CCPA 1973) ("Combining the *teachings* of references does not involve an ability to combine their specific structures."); *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 907 (Fed. Cir. 1985)

18

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

("A reference must be considered for everything it *teaches* by way of technology and is not limited to the particular *invention* it is describing and attempting to protect.  On the issue of obviousness, the combined teachings of the prior art as a whole must be considered."); *see also In re Heck*, 699 F.2d 1331, 1332-33 (Fed. Cir. 1983).

Rather, the proper analysis in determining patentability is whether it would have been obvious to one of ordinary skill in the art to combine the references for the reason articulated and whether the reason has sound rational underpinnings.  *KSR*, 550 U.S. at 418; *In re Keller*, 642 F.2d 413, 425 (CCPA 1981) ("[T]he test [for obviousness] is what the combined teachings of the references would have suggested to those of ordinary skill in the art.").  As noted, the Patent Owner does not present persuasive evidence or arguments to establish that implementing the suggested combination in an operable manner would be beyond the skill of a person of ordinary skill in the art which is demonstrably high.  *See Okajima*, 261 F.3d at 1355; *Union Carbide*, 724 F.2d at 1573.

*Ogawa Teaches Away*

The Patent Owner argues that Ogawa teaches away from the modifications shown in Modified View 2(A) to the device of Caterpillar because it discloses that an object is to use a single cylinder and discusses the need for two separate cylinders in the prior art (PO Comm. 2, 9).  However, this line of argument is not persuasive because as discussed *supra*, Modified View 2(A) with its inclusion of two hydraulic cylinders is not the basis of the '7030 Decision.  In entering the obviousness rejection based on

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

the combination of Caterpillar and Ogawa, the Board considered not only
the particular invention described, but what these references teach by way of
technology. *EWP*, 755 F.2d at 907. In this regard, we also note that claims
of the '489 patent actually recite "at least one hydraulic cylinder" except for
dependent claim 13 which recites "a single hydraulic cylinder." Claim 13
was also rejected as obvious because this feature is clearly disclosed in
Caterpillar and Ogawa ('7030 Decision 32). Thus, the conclusion of the
'7030 Decision is that the claims of the '489 patent are obvious whether only
a single cylinder is used or two cylinders are used. The Patent Owner's
additional inoperability arguments based on the Requester's Modified View
2(A) (PO Comm. 9) are unpersuasive for the reasons discussed *supra*.


*Reconstruction*

The Patent Owner argues that the suggested modification to
Caterpillar is a complete reconstruction that does not function (PO Comm.
2). The Patent Owner argues that the following modifications are required
to the Caterpillar device:

1.  separate the side walls 13a from the jaw 13;

2.  provide a new pivot hole for the separated jaw 13;

3.  add a second hydraulic cylinder;

4.  provide a hole in the separated jaw 13 for the hydraulic cylinder;

5.  provide a connecting arm for the hole of the separated jaw 13; and

6.  provide a mount for the second hydraulic cylinder.

(PO Comm. 10).

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

However, as reproduced *supra*, "[w]hile the . . . suggested modification to Caterpillar would entail design and structural changes, we observe that it is not necessary that the inventions of the references must be physically combinable, without change, to render obvious the invention under review. *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983); *see also In re Keller*, 642 F.2d 413, 425 (CCPA 1981)." ('7030 Decision 31). The modifications identified by the Requester appear to be routine and well within the skill of one of ordinary skill in the art, which is demonstrably high. The Patent Owner does not present persuasive evidence to establish that the identified modifications or implementing the suggested combination in an operable manner via alternative modifications would be beyond the skill of a person of ordinary skill in the art. The Patent Owner's additional inoperability arguments based on the Requester's Modified View 2(A) (PO Comm. 11-12) are unpersuasive for the reasons discussed *supra*.

### Declaration of Jacobson

The Patent Owner argues that the Declaration of Jacobson is contrary to the prior actions of the Requester and should be discounted (PO Comm. 3). The Patent Owner notes that Mr. Jacobson was a Director of Engineering at Genesis (i.e., the Requester) and the inventor of U.S. Patent No. 7,284,718 which states "[t]here is a need for a heavy duty demolition shear with interchangeable jaw assemblies that can be easily mounted an[d] demounted to the apparatus." (PO Comm. 14, *quoting* '718 patent, col. 1, ll. 65-67). Hence, the Patent Owner asserts that the Requester has admitted existence of a "long-felt need." (PO Comm. 16). The Requester also asserts

21

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

that because Genesis failed to arrive at a design similar to that disclosed in the '489 patent until year 2005, this indicates that the claims of the '489 patent are not obvious and it is contradictory for Mr. Jacobson to assert obviousness when such design eluded Mr. Jacobson until year 2005 even though he had extensive experience in the industry (PO Comm. 14-15).

Firstly, we note that Jacobson Declaration is not dispositive as to our conclusion of obviousness with respect to the claims of the '489 patent. Secondly, while it may be argued that the identified statement in U.S. Patent No. 7,284,718 is evidence of non-obviousness, it is merely one piece of evidence that must be considered with all of the evidence of record which has been discussed *supra*. In addition, long-felt need requires showing the existence of a persistent problem recognized by those of ordinary skill in the art for which a solution was not known. *In re Gershon*, 372 F.2d 535, 539 (CCPA 1967). As noted, the solution to the problem addressed by the '489 patent was already known in the art (FF5 A). Moreover, while providing for such a feature may not have been obvious to Mr. Jacobson at the time the application for U.S. Patent No. 7,284,718 was filed, the issue is whether it would have been obvious to a person of ordinary skill in the art who would have been aware of all of the pertinent prior art, including those in the present record. *See Custom Accessories*, 807 F.2d at 962 ("The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is not determinative.").

The Patent Owner further argues that Genesis (i.e., the Requester) was found liable to the Patent Owner for trade secret misappropriation in a court action and that the "misappropriated trade secrets used by Genesis to design

22

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

their jaw set were some of the design details used for the internal elements of the jaw set that is the subject of the present reexamination proceeding." (PO Comm. 15).  However, the Patent Owner does not provide adequate details as to the nexus between the misappropriated trade secrets and the claimed invention of the '489 patent which would allow us to evaluate the pertinence of the trade secret misappropriation, if any.

### Amendments to the Claims

The Patent Owner asserts that because independent claims 1, 7 and 17-19 have been amended as suggested by the Board to clearly distinguish over the prior art of record, the rejections have been overcome (PO Comm. 3, 16-17, *citing* '7030 Decision 27-28).  The Patent Owner misapprehends the record.  The '7030 Decision states:

> While the side walls 13a are attached to the remaining structure of the first jaw 13, we do not consider the claims to require physical independence or separation.  To the extent that physical independence or separation from a jaw was the intended meaning of the limitation, the Patent Owner has had an adequate opportunity to amend the claims accordingly.

('7030 Decision 27-28).

The above excerpt addresses the *anticipation* rejection of claims 20 and 21, this anticipation rejection being reversed because Caterpillar does not disclose "a pair of movable blades pivoted together about a main pivot pin." (*Id.* at 28; *see also* Req. Comm. 17-18).  Whereas such amended language may have overcome the anticipation rejection because the side walls 13a of Caterpillar are attached to the first jaw 13, the amended language does not overcome the obviousness rejection based on the

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

combination of Caterpillar and Ogawa (*id.* at 28-32).  As explained by the
Examiner, "in modifying Caterpillar in view of Ogawa, the BPAI has
determined that the resulting combination would include a modified first jaw
13 that is 'separate from' the lateral walls 13a (which constitute the claimed
'bridge housing')."  (Determination 9).

### Claims 4-12, 15-16 and 21

These claims require "removable keeper pins to secure the bridge
housing to the receiving member."  (*See, e.g.*, claim 4).  The Examiner
determined that these claims are unpatentable over the combination of
Caterpillar in view of Ogawa and Clark and adopted the rejection remanded
for reconsideration (Determination 10).  The Examiner agrees with the
Requester's finding that Clark discloses a pair of remote-controlled
retractable pins that engage apertures to securely engage a bucket to a
receiving member and concluding that these claims would have been
obvious to a person of ordinary skill based on Clark's express teaching that
its retractable pin system is an improvement over manually inserted pins
(Determination 7-8, 10; *see also* Clark, col. 2, l. 63-col. 3, l. 9).

In addition to relying on the unpersuasive arguments addressed *supra*
(PO Comm. 18), the Patent Owner argues that "the pin arrangement
disclosed in Clark is directed to a terminal piece of equipment, such as, for
example, the bucket 4 illustrated in Figs. 1-3," which is "fundamentally
different from the subject invention" that uses pins to secure a separate and
distinct bridge housing (PO Comm. 17-18).

24

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2

We find no merit in the Patent Owner's argument.  The primary reference Caterpillar discloses the use of a locking pin to secure a bridge housing (FF5 D).  Clark is being relied upon for the use of multiple, retractable pins in the art for securement of removable components.  It would have been obvious to one of ordinary skill in the art to use the pins of Clark for the reasons suggested therein to secure the demolition tool resulting from the combination of Caterpillar and Ogawa where the bridge housing is separate from the blades as discussed *supra*.  These claims are directed to a predictable variation wherein one element is substituted for another known in the art.  *KSR*, 550 U.S. at 417; *see also id*. at 416 ("when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result.")


NEW DECISION UNDER 37 C.F.R. § 41.77(f):

1.    Claims 1-3, 13-14 and 17-20 stand rejected under 35 U.S.C. § 103 as obvious over Caterpillar in view of Ogawa.

2.    Claims 4-12, 15, 16 and 21 stand rejected under 35 U.S.C. § 103 as obvious over Caterpillar in view of Ogawa and Clark.


peb

Appeal 2014-001006
Reexamination Control 95/001,352
Patent US 7,121,489 B2


cc:

Patent Owner:
THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222


Third Party Requestor:
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 828
BLOOMFIELD HILLS, MI 48303

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,352 | 05/05/2010 | 7,121,489 | 15804-000001/US/RXA | 7638 |

28289        7590        09/04/2012
THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222

| EXAMINER |
|---|
| ENGLISH, PETER C |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/04/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

_____

GENESIS ATTACHMENTS, LLC
Requester, Appellant

v.

ALLIED ERECTING AND DISMANTLING CO., INC., et al.[1]
Respondents

_____

Appeal 2012-007030
*Inter partes* Reexamination Control 95/001,352
Patent US 7,121,489 B2[2]
Technology Center 3900

_____

*Before* JEFFREY B. ROBERTSON, DANIEL S. SONG and
RAE LYNN P. GUEST, *Administrative Patent Judges*.

SONG, *Administrative Patent Judge*

DECISION ON APPEAL

_____

[1] Allied Gator, Inc. and inventor John R. Ramun are also identified as real parties in interest (Respondent Brief (hereinafter "Res. Br.") 3). The identified real parties in interest are collectively referred to herein as the "Patent Owner."

[2] Patent US 7,121,489 B2 (hereinafter "'489 patent") issued October 17, 2006 to Ramun.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

## STATEMENT OF THE CASE

Claims 1-21 are subject to reexamination and have been allowed (Right to Appeal Notice[3] (hereinafter "RAN") 1). Claims 20 and 21 were added during the reexamination proceeding. Claims 1-19 of the '489 patent were initially rejected during the reexamination proceeding based on various rejections proposed by the Requester, but these adopted rejections were withdrawn in view of the amendments made to each of the independent claims (RAN 2).

The Requester appeals under 35 U.S.C. §§ 134 and 315 from the Examiner's refusal to adopt various proposed rejections, the withdrawal of certain previously adopted rejections, and determinations that certain claims are patentable (Appeal Brief (hereinafter "App. Br.") 4-5). In addition to the Appeal Brief, the Requester also relies on a Rebuttal Brief (hereinafter "Reb. Br."). The Patent Owner relies on a Respondent Brief (hereinafter "Resp. Br.") as well as a Declaration of inventor Mr. Ramun and exhibits therein for support of the Examiner's actions. We have jurisdiction under 35 U.S.C. §§ 134(b) and 315.

An oral hearing with the representatives of the Requester and Patent Owner regarding the appeal was held before the Board of Patent Appeals and Interferences on July 25, 2012. We also note that the '489 patent is involved in litigation styled *Allied Erecting and Dismantling Co. et al. v. Genesis Equip. & Mfg. Inc. et al.*, 4:08-CV-00589 (N.D. Ohio) which has been stayed pending the present reexamination proceeding (App. Br. 2;

---

[3] The Examiner's Answer dated February 3, 2012 (hereinafter "Ans.") incorporates the RAN dated September 23, 2011.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Resp. Br. 3). In the litigation, a Memorandum Opinion was issued on January 19, 2010 (hereinafter "Dist. Ct. Op.") which construes various terms of the '489 patent at issue.

We AFFIRM-IN-PART, enter NEW GROUNDS OF REJECTION, and REMAND for further consideration.

THE INVENTION

*Findings of Fact*

FF1. A. The '489 patent is directed to a tool attachment system which allows different tools such as hydraulically actuated metal cutting shears, concrete crushers, and grapples that have movable jaws to be attached to equipment such as backhoes (Abstract; col. 1, ll. 20-26).

B. Figure 2 of the '489 patent is reproduced below.



FIG. 2

Figure 2 of the '489 patent reproduced above illustrates a side view of a shear 10' including a first blade 12 and a second blade 14 pivotally connected at a main pin 16 to a universal body 18' (col. 3, ll. 55-56; col. 5, ll. 57-59; col. 6, ll. 18-23; Fig. 2).

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

C.  The specification of the '489 patent states "[a] bridge housing 48 surrounds the main pin 16 and is utilized for quickly and easily attaching the main pin 16 and the associated jaw set to the universal body 18."  (Col. 6, ll. 56-59).

D.  Figure 57 of the '498 patent is reproduced below.



FIG. 57

Figure 57 of the '489 patent reproduced above illustrates a perspective view of the quick release system including bridge housing 48 that is positioned against the receiving member 42 and secured thereto by keeper pins 50 which are inserted through the apertures 52 of the bridge housing 48 and the receiving member 42 (col. 5, ll. 46-47; Certificate of Correction dated October 17, 2006, inserting originally filed paragraph [0081]; Fig. 57).

E.  The specification of the '489 patent teaches that the advantage of the claimed invention is that "the outer bearing structure surrounding the main pin 16 will remain affixed even when the tool unit is removed from the universal body 18.  This provides the advantage that the bearing or rotating surfaces will be protected from dirt and grit even when the tool unit is disassembled."  (Col. 6, l. 67-col. 7, l. 5).

F.  Figures 8 and 9 of the '489 patent are reproduced below.

4

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2



Figure 8 of the '489 patent reproduced above is a partial sectional view of the shear and the components of the bridge housing 48 with the main pin 16 received therein while Figure 9 illustrates the disassembly of the tool unit (col. 4, ll. 1-6; Fig. 8).

G.   In discussing the bridge housing 48, the specification of the '489 patent states that "the first end 400 of the bridge housing 48 has a sleeve 408 between the two opposing plates 405, 406," and discloses that the sleeve 408 has a support surface 410 (not shown) (Col. 7, ll. 27-30; see also col. 7, ll. 38-40).  Hence, the specification and the illustration of Figure 8 of the '489 patent indicates that the "bridge housing" is an assembly of components.

CLAIMS

Claims 1, 7 and 17-21 are independent claims.  Representative independent claims 1 and 21 on appeal read as follows (Resp. Br., Claims App'x.; bracketed text and underlining removed; italics added for emphasis):

1.   (Once Amended) A tool set for coupling to the receiving member of a body having hydraulically powered blades, the tool set comprising:
   *a pair of movable blades pivoted together about a main pivot pin;*

5

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

> *a bridge housing encasing the main pivot pin;*
> *wherein the blades are movable relative to the bridge housing;*
>
> *wherein the bridge housing with the main pivot pin intact therein is adapted to be detachably connected to the receiving member* and the pair of movable blades is adapted to be detachably connected to at least one hydraulic cylinder such that the tool set may be removed from or attached to the body without the need to disengage or engage the main pivot pin from the blades, thereby providing a quick release system for attaching the tool set to the body; and
>
> wherein the bridge housing has an aperture adapted to be mated with a matching aperture of the receiving member through a removable keeper pin to secure the bridge housing to the receiving member.

21. (New) A demolition tool comprising:
    a) a body having;
        1) a receiving member, and
        2) at least one hydraulic cylinder mounted upon the body;
    b) a tool set for coupling to the receiving member of the body, wherein the tool set has:
        1) *a pair of movable blades pivoted together about a main pivot pin; and*
        2) *a bridge housing encasing the common pivot pin*; and
    c) *wherein the bridge housing with the main pivot pin engaged therein is detachably connected to the receiving member* and the pair of movable blades is detachably connected to the one or more hydraulic cylinders such that the tool set may be removed from or attached to the body without the need to disengage or engage the main pivot pin from the blades, thereby providing a quick release system for attaching the tool set to the body of the demolition tool, and wherein the bridge housing has an aperture adapted to be mated with a matching aperture of the receiving member through removable keeper pins to secure the bridge housing to the receiving member and

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

> wherein the bridge housing has a support surface adapted to
> mate with a complementary engaging surface of the receiving
> member when securing the bridge housing to the receiving
> member and *wherein the support surface and the engaging*
> *surfaces are arcuate*.

## PROPOSED REJECTIONS NOT ADOPTED OR WITHDRAWN

1.   Claims 1-21 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 5,062,227 (hereinafter "De Gier").

2.   Claims 1, 2, 4-8 and 10-19 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 4,283,866 (hereinafter "Ogawa").

3.   Claims 1-3 and 17-20 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. Re. 35,432 (hereinafter "LaBounty").

4.   Claims 4-12 and 21 under 35 U.S.C. § 103 as unpatentable over LaBounty in view of U.S. Patent No. 4,106,646 (hereinafter "Weisgerber")[4].

5.   Claims 13-14 under 35 U.S.C. § 103 as unpatentable over LaBounty in view of Ogawa.[5]

---

[4] The Appeal Brief identified claim 21 as being unpatentable over the combination of LaBounty and Weisgerber (App. Br. 4). The Examiner states that this proposed rejection is not proper in the appeal because it was "never addressed during the *inter partes* reexamination proceeding." (Ans.). The Requester argues that claim 21 is characterized by the Respondents as an independent claim which merely incorporates the limitations of originally dependent claim 9, and that the patentability of claim 9 was, in fact, argued by the Requester as being unpatentable over the combination of LaBounty and Weisgerber (Reb. Br. 1-2). Hence, the Requester argues that patentability of claim 21 was addressed during the reexamination proceeding and properly on appeal (Reb. Br. 2). This issue is moot because, as discussed *infra*, LaBounty fails to disclose "a pair of movable blades pivoted together about a main pivot pin" and Weisgerber is not relied upon as curing this deficiency of LaBounty.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

6.    Claims 20 and 21 under 35 U.S.C. § 102 as anticipated by German reference DE 297 15 490 U 1 (hereinafter "Caterpillar"; citations to English translation of record).

7.    Claims 1-3, 13, 14, and 17-20 under 35 U.S.C. § 103 as unpatentable over Caterpillar in view of Ogawa.

8.    Claims 4-12, 15, 16 and 21 under 35 U.S.C. § 103 as unpatentable over Caterpillar in view of Ogawa, and further in view of U.S. Patent No. 5,546,683 (hereinafter "Clark").

9.    Claims 20 and 21 under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 2,332,561 (hereinafter "Drott").


PRINCIPLES OF LAW

To establish anticipation, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim.  *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed. Cir. 2001). Analysis of whether a claim is patentable over the prior art

---

[5] The Appeal Brief identified claim 21 as being unpatentable over the combination of LaBounty and Ogawa (App. Br. 4).  Moreover, together with this rejection, the Appeal Brief also identified claims 15-16 as being unpatentable over the combination of LaBounty and Weisgerber, and further in view of Ogawa (App. Br. 4).  The Examiner states that these proposed rejections are not proper in the appeal because they "were never addressed during the *inter partes* reexamination proceeding." (Ans.).  The Requester concedes that the rejections of these claims under the combination of LaBounty and Ogawa were not previously addressed in the reexamination (Reb. Br. 3).  Correspondingly, claims 15-16 and 21 are not properly before the Board for review and the Requester's arguments directed thereto are moot.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

under 35 U.S.C. § 102 begins with a determination of the scope of the claim. Claim construction is a question of law. *See In re Donaldson Co., Inc.*, 16 F.3d 1189, 1192 (en banc) (Fed. Cir. 1994). We determine the scope of the claims in patent applications not solely on the basis of the claim language, but upon giving claims "their broadest reasonable interpretation consistent with the specification" and "in light of the specification as it would be interpreted by one of ordinary skill in the art." *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). This is the standard for claim interpretation in both original examination and re-examination. *See In re Yamamoto,* 740 F.2d 1569, 1571 (Fed. Cir. 1984).

We must be careful not to read a particular embodiment appearing in the written description into the claim if the claim language is broader than the embodiment. *See Superguide Corp. v. DirecTV Enter., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004). However, "claims are not to be read in a vacuum, and limitations therein are to be interpreted in light of the specification in giving them their broadest reasonable interpretation." *In re Okuzawa*, 537 F.2d 545, 548 (CCPA 1976); *In re Marosi*, 710 F.2d 799, 802 (Fed. Cir. 1983). While the PTO is obligated to give claims their broadest reasonable interpretation, "any such construction [must] be '*consistent with the specification,* . . . and . . . claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art.'" *In re Suitco Surface, Inc.,* 603 F.3d 1255, 1259-60 (Fed. Cir. 2010).

"Section 103 forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). "When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 417. The Court also noted that "[t]o facilitate review, this analysis should be made explicit." *Id.* at 418.

## CLAIM CONSTRUCTION ISSUES

During the above noted *Allied Erecting and Dismantling* litigation, the claim term "bridge housing" in the '489 patent was construed to mean "*a structure that engages the main pivot pin and is adapted to be detachably connected to the receiving member*." (Dist. Ct. Op., pg. 34). The term "receiving member" was also interpreted to mean "*portion of the body which receives or accepts the bridge housing of the tool set*." (Dist. Ct. Op., 34).

As discussed in detail *infra* with respect to each of the proposed rejections, the Examiner's decision to not reject the claims is principally based on a finding that the prior art fails to disclose a "bridge housing." The Requester asserts that the term "bridge housing" has been improperly construed by the Examiner in refusing to adopt various proposed rejections and withdrawing the previously adopted rejections based on the amendments

10

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

made by the Patent Owner (App. Br. 6). The Requester argues that the Patent Owner cannot advocate for broad construction during infringement proceeding and then advocate a narrower construction during reexamination proceedings to avoid invalidity, and that we must interpret the claims at least as broadly as that adopted by the district court (App. Br. 11-12). However, we observe that the Patent Owner has not advocated a different claim interpretation during the present reexamination proceeding, nor did the Examiner adopt a different interpretation. In this regard, the Requester also does not advocate a construction that differs from that made by the District Court. Thus, we find no reason to disturb the actual construction of record, that is, that "bridge housing" means "a structure that engages the main pivot pin and is adapted to be detachably connected to the receiving member."

In addition, we do not subscribe to the Patent Owner and the Examiner's view that the claim, as properly interpreted, requires the bridge housing to be a "separate structure" in the manner advocated, wherein the bridge housing cannot be a component of a larger structure or part. The claim language does not preclude such an implementation. In this regard, whereas the Specification of the '489 patent discloses the bridge housing as a separate structure, we also observe that it is secured to the main pin to form a removable assembly together with the blades (FF1 B-C), and thus, forms an assembly with the blades. The "bridge housing" is also not limited to a unitary, monolithic structure in that the Specification of the '489 patent discloses that the bridge housing is made of numerous components, i.e., that it is itself an assembly (FF1 G).

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Nonetheless, in view of the claim language and the Specification of the '489 patent, a "bridge housing" must be a distinct structural object (be it unitary/assembly and separated/attached) which serves the function recited in the claims and disclosed in the Specification of the '489 patent. As a separately recited element in the claims and described as such in the Specification of the '489 patent, a bridge housing must be distinctive and discernable from the other structures. In particular, the claims which are supported by the Specification of the '489 patent require that the bridge housing be an actual discernable structure which is "detachably connected to the receiving member" and exists for performing the function of allowing the tool set to "be removed from or attached to the body without the need to disengage or engage the main pivot pin from the blades, thereby providing a quick release system for attaching the tool set to the body." Consistent therewith, the claim interpretation of record requires a singular structure in that it states "*a structure* that engages the main pivot pin and *is* adapted to be detachably connected to the receiving member." Of course, as noted, "bridge housing" need not be a unitary structure and may be an assembly (FF1 G).

Correspondingly, we disagree with the Requester's position that any portion of any structure of the prior art, regardless of its independent existence and function, satisfies the recited "bridge housing" of the claims. As discussed *supra*, the drawing of imaginary boundaries which carves out a small portion of a jaw or blade and combining it with other structure to contend that such a combination is a "bridge housing" essentially ignores what a prior art actually discloses, and any claim construction that

12

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

encompasses such combinations would be unreasonable in view of the
Specification.

Whereas the Requester cites to case law in support of assertion that
multiple claim limitations can be satisfied by a single element, and that
multiple elements can be combined to satisfy a single claim limitation (App.
Br. 12; Reply Br. 4), we observe that claim construction and understanding
of the disclosures in the prior art are facts specific.  While such cases are
instructive for proper claim construction and the manner in which prior art is
applied, what may be considered reasonable under one set of facts may be
unreasonable in another.  The Requester cites to a footnote in *Intellectual
Pro. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.* in support
of its assertions, but the footnote merely states that the court "see[s] no
reason why, as a matter of law, one claim limitation may not be responsive
to another merely because they are located in the same physical structure" in
reversing a district courts granting of summary judgment of invalidity.
*Intellectual Pro. Dev.*, 336 F.3d 1308, 1320, fn. 9 (Fed. Cir. 2003).  The
footnote in *Intellectual Pro. Dev.* does not stand for the proposition that a
single structure can be read upon multiple claim limitations would be
reasonable and correct irrespective of the facts of the case.  In fact, *In re
Kelly*, also relied upon by the Requester and cited as precedent in the above
noted footnote of *Intellectual Pro. Dev.*, makes clear that claim
interpretation must be reasonable.  *In re Kelly*, 305 F.2d 909, 915-16 (CCPA
1962) ("In a case such as this, where there is no ambiguity in the language of
the claims, they should be carefully analyzed to see if they can be
*reasonably* found to be supported by the disclosed structure. … Each claim

13

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

in each case must be interpreted as broadly as its language will *reasonably permit and each interpretation will depend upon the individual facts of each case.* … The governing consideration is not double inclusion, but rather is what is a *reasonable* construction of the language of the claims.")(emphasis added).

ANALYSIS

Proposed Rejection 1: Claims 1-21 Anticipated by De Gier

*Findings of Fact*

FF2.  A.  De Gier discloses a device for breaking objects including a pair of jaws having teeth which are pivotable relative to each other about a pivot pin (Abst.).  Figures 1 and 3 of De Gier are reproduced below:



Fig.1.

Fig. 3.

14

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Figure 1 reproduced above shows a side elevational view of an arm 1 with a device 11 for breaking objects while Figure 3 reproduced above shows an elevational view of parts of the two jaws 12, 13 that are pivotally coupled together by a pivot pin 14 (col. 2, ll. 27-33, 44-49; col. 3, ll. 1-6; Figs. 1 and 3).

B. According to De Gier, "jaw 13 comprises three plates 13', 13", 13"', to which teeth 18 are secured[.]" (Col. 3, ll. 13-15; Fig. 3).

C. Jaws 12 and 13 of De Gier are connected to a coupling piece 24 by a hinge pin 23, the coupling piece 24 being connected to the arm 1 (col. 3, ll. 30-34).

D. De Gier discloses that the strut 26 and strut 29 are connected to support 25 which is secured to the arm 1 (col. 3, ll. 35-42).

E. De Gier states that "jaw 13 will assume an at least substantially fixed position relative to the arm 1, so that this jaw is also called the so-called fixed jaw." (Col. 3, ll. 53-57). Hence, jaw 13 is fixed and does not pivot about pivot pin 14.

*Analysis*

The Requester argues that the Examiner erred in refusing to reject claims 1-21 as being anticipated by De Gier asserting that the limitation "bridge housing" is satisfied by the combination of plates 13' and 13"' of jaw 13, and coupling piece 24 (App. Br. 8). The Requester also argues that the claim language requiring the blades to be "movable relative to the bridge housing" is satisfied because a portion of the bridge and jaws 12 and 13" move relative to coupling piece 24, and the claims "do not require that the

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

blades are movable relative to the entire bridge." (App. Br. 11). The Requester further argues that the Specification of the '498 patent does not require the bridge housing to be separate, much less provide a written description of such requirement (App. Br. 11).

The Examiner finds, *inter alia*, that member 13 is part of the claimed blades, and not a bridge housing, and that De Gier does not disclose a bridge housing which satisfies the limitations in the claims. In this regard, the Examiner states that "[t]he language of claims 1-21 makes it clear that the bridge housing is a separate element/structure from the movable blades" and this is the only reasonable interpretation of the plain meaning of the terms (RAN 6). We sustain the Examiner's refusal to adopt the proposed rejection.

Firstly, we disagree with the Requester that the coupling piece 24 and a portion of the plates 13' and 13''' of jaw 13 in De Gier can be considered to be a bridge housing. The Requester draws an imaginary boundary which carves out a small portion of the plates 13' and 13''' around the pivot pin 14 while excluding the teeth 18 of the plates. However, De Gier is clear that plates 13' and 13''' are actually part of the jaw 13 and have teeth thereon (FF2 A-D) such that the Requester's strained understanding of De Gier is not supported by the disclosure therein. There is no credible evidence or rational basis for the assertion that a person of ordinary skill in the art would understand the disclosure of De Gier in the manner asserted, or understand the limitations of the claims of the '489 patent as advocated by the Requester as discussed *supra*, so as to encompass the coupling piece 24, and selective portions of the plates 13' and 13''' based on some imaginary boundary thereon. We find the plates 13' and 13''' of the jaw 13 of De Gier do not

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

satisfy the limitation requiring a bridge housing.  The coupling piece 24 of De Gier, on its own, does not encase main pivot pin 14, and thus, also does not satisfy the recited claim language.

We further observe that De Gier also fails to disclose "a pair of movable blades pivoted together about a main pivot pin" as recited in the claims because jaw 13 is fixed (FF2 E).  While we do not agree with the Examiner's distinction of the claims based on the fact that arm 1 and strut 29 of De Gier are separate members whereas the claims recites a single "receiving member" (RAN 6), this issue is moot in view of the above noted deficiencies of De Gier.  Therefore, we sustain the Examiner's refusal to adopt the proposed anticipation rejection based on De Gier.  The remaining disagreements between the Requester and the Examiner with respect to De Gier are moot.

<u>Proposed Rejection 2: Claims 1, 2, 4-8 and 10-19 Anticipated by Ogawa</u>

*Findings of Fact*

FF3.  A.  Ogawa discloses a convertible bucket attachment for excavation and clasping (Abst.).  Figure 4a of Ogawa is reproduced below:

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2



FIG. 4a

Figure 4a reproduced above shows a side view of the bucket attachment in according to one embodiment including bucket proper 1 and a sub-bucket 2 that are pivotally engaged by pin 5' on arm 11 so that both of the buckets pivot upon actuation of a cylinder actuator 13 (col. 2, l. 59-col. 3, l. 10; Fig. 4a).

B.  In discussing a prior art bucket apparatus, Ogawa states that "provision of a cylinder actuator between the back and the fore bucket has imposed a substantial limitation on the distance of range in which both bucket members can be operatively moved relative to each other, and prevented the range of angular movement of the members from being as wide as 180° as in the embodiment of the invention." (Col. 1, ll. 49-55).

C.  Figures 6 and 7 of Ogawa are reproduced below:

18

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2



Figure 6 shows a side view while Figure 7 shows a plan view, respectively, of a modified embodiment of a bucket attachment including bucket proper 1 having stay 4, sub-bucket 2, pin 5', sub-link members 14, upper link members 16, and bracket 9 which is used to secure the bucket portion to the arm 11 (col. 3, l. 62-col. 4, l. 9). Stay 4 of bucket proper 1 is not attached to bracket 9 (Figs. 6 and 7).

*Analysis*

The Requester argues that the Examiner erred in refusing to reject claims 1, 2, 4-8 and 10-19 as being anticipated by Ogawa asserting that the limitation "bridge housing" is satisfied by the combination of stays 4 rigidly secured to the bucket proper 1, and single brackets 9 (App. Br. 14-15). The Requester also argues that the claim language requiring the blades to be "movable relative to the bridge housing" is satisfied because the buckets 1, 2 move relative to the single brackets 9, and the claims do not require the relative movement to the entire bridge housing or the entire pin to be

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

encased by bridge housing (App. Br. 14-16).  According to the Requester, arm 11 corresponds to the recited receiving member, and hollow bushes 6 (shown in Figs. 2, 3) correspond to the recited main pivot pin, the hollow bushes 6 being engaged by the stays 4 with single brackets 9 being detachably connected to the arm 11 (App. Br. 14-15).

The Examiner finds, *inter alia*, that Ogawa does not disclose a bridge housing as required by the claims stating that while stays 4 may be considered a bridge housing or portion thereof, the bucket proper 1 is not movable relative thereto, and that single bracket 9 can alternatively be considered a bridge housing or portion thereof, but it does not encase the pivot pin 6 (RAN 4).  We sustain the Examiner's refusal to adopt the proposed rejection.

Requester appears to rely on the combination of stays 4 and single brackets 9 to satisfy the recited bridge housing.  However, the stays 4 of Ogawa are not attached to the single brackets 9, because Ogawa discloses intervening sub-link members 14 and upper link members 16 there between (FF3 C).  As discussed *supra*, while we are of the opinion that "bridge housing" may be an assembly, we do not consider the single brackets 9 of Ogawa forms such an assembly with the stays 4 in a manner that can be characterized as providing a distinctive device or structure that functions to allow for detachable connection to the receiving member.  Thus, we sustain the Examiner's refusal to reject these claims as anticipated by Ogawa.  The remaining disagreements between the Requester and the Examiner concerning Ogawa are moot.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Proposed Rejection 3: Claims 1-3 and 17-20 Anticipated by LaBounty

*Findings of Fact*

FF4.  A.  LaBounty discloses a demolition tool for attachment to a boom

structure (Abst.).  Figures 9 and 15 of LaBounty are reproduced below.



Figure 9 of LaBounty reproduced above shows a perspective view of

a wood shear including jaws 22.11 and 23.11 pivoted about a pivot structure

in accordance with one embodiment (col. 3, ll. 1-4; Fig. 9).  Figure 15 of

LaBounty reproduced above is a detailed section view through the pivot

structure (col. 3, ll. 19-20; Fig. 15).

B.  LaBounty discloses that the tool is "readily demountable" from

frame plates 18.1 by removing the center pivot pin 24 (col. 3, ll. 55-57; col.

6, ll. 17-22).

C.  LaBounty teaches that the jaws 22 and 23 are secured together by

a pivot pin 58 (*see* col. 6, ll. 14-17).

D.  The specification of LaBounty states that "[t]he upper swingable

jaw 22 is press fit onto the outer periphery of the connector pin 58.

Accordingly, the upper jaw 22 has a central opening 65 which tightly fits in

21

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

a press fit onto the outer periphery of the pin 58 so that the upper jaw 22 will not rotate with respect to the pin 58, but is stationary with the pin 58 which will turn as the upper jaw 22 turns." (Col. 6, ll. 35-40). Thus, the upper jaw 22 does not pivot about pin 58.

*Analysis*

The Requester argues that the Examiner erred in refusing to reject claims 1-3 and 17-20 as being anticipated by LaBounty asserting that the hollow connector pin 58 corresponds to the recited main pivot pin and that the limitation "bridge housing" is satisfied by the combination of single removable pivot pin 24, bronze bushing 68 and end cap 69 (App. Br. 17). The Requester contends that the "bridge housing" functions to allow removal of the jaws 22 and 23 from the frame plates 18.1, which correspond to the recited receiving member, upon removal of the removable pivot pin 24 while the jaws are still pivotably connected via the hollow connector pin 58 (App. Br. 17).

The Examiner contends that "LaBounty et al. fails to teach a bridge housing that encases the main pivot pin 58 [] or that engages the pivot pin 58 [] wherein the bridge housing with the main pivot pin 58 engaged/intact therein is detachably connected to the receiving members 18.1." (RAN 7). According to the Examiner, a person of ordinary skill in the art "would not consider a pivot pin, a bushing and/or a retainer cap to constitute a 'bridge housing'" because they "are all elements that are distinct from a housing and that might be carried by or supported on a housing." (RAN 7-8). We sustain the Examiner's refusal to adopt the proposed rejection.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Firstly, we observe that in LaBounty, the hollow connector pin 58 is tightly press fitted to the upper jaw 22 so that the upper jaw 22 does not rotate with respect to the pin 58, but is stationary with the pin 58 (FF4 D). Thus, the device of LaBounty does not disclose "a pair of movable blades pivoted together about a main pivot pin" as specifically required by the claims. Whereas the Requester has asserted that "a pair of movable blades pivoted together about a main pivot pin" is disclosed in LaBounty (App. Br. 17),[6] this assertion is not supported by the record. Secondly, we agree with the Examiner that the center pivot pin 24 is not a housing structure and cannot reasonable be considered a component of a "bridge housing." Rather than encasing the hollow connector pin 58 as required by claims 1-3 and 17-19, the center pivot pin 24 is instead, surrounded by the hollow connector pin 58 so as to be nested therein. LaBounty clearly teaches that the center pivot pin 24 is removed in order to demount the jaws from the frame plates 18.1 (FF4 B), and thus, the center pivot pin 24 is a "removable keeper pin" also recited in various claims.

Moreover, we observe that LaBounty includes lower jaw 23 fastened to retainer caps 69 and bronze bushings 68 via cap screws 70 (*see* col. 6, ll. 48-51; Figure 15), which Requester identifies as components of the "bridge housing" (App. Br. 17). Accordingly, LaBounty would fail to meet the requirement of claims 1-3 and 17-19 that "the blades are movable relative to the bridge housing." Further, we observe that the surfaces where the bridge

---

[6] Compare *Inter Partes* Reexamination Request filed May 5, 2010 (hereinafter "Request") which merely states that the blades of LaBounty are "pivoted together by a main pivot 58" which does not correspond to the claim language (Request, Pg. 22).

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

housing (identified by Requester as pin 24, bronze bushings 68 and retainer caps 69) engages the receiving member (identified by Requester as frame 18) are not arcuate, as required by claim 20, but rather appear to be flat (*see* Figure 15).

Therefore, we sustain the Examiner's refusal to adopt the proposed anticipation rejection based on LaBounty. The remaining disagreements between the Requester and the Examiner are moot.

Proposed Rejection 4: Claims 4-12 and 21 obvious over LaBounty and Weisgerber

The Requester's proposed obviousness rejection of claim 4-12 and 21 over the combination of LaBounty and Weisgerber relies on the disclosure of LaBounty which we find inadequate for the reasons discussed *supra* relative to Proposed Rejection 3 (App. Br. 20). Weisgerber is not relied upon to cure the discussed deficiencies of LaBounty. Therefore, we sustain the Examiner's refusal to adopt the proposed obviousness rejection based on the combination of LaBounty and Weisgerber.

Proposed Rejection 5: Claims 13-14 obvious over LaBounty and Ogawa

The Requester's proposed obviousness rejection of claim 13-14 over the combination of LaBounty and Ogawa relies on the disclosure of LaBounty which we find inadequate for the reasons discussed *supra* relative to Proposed Rejection 3 (App. Br. 22). Ogawa is not relied upon to cure the discussed deficiencies of LaBounty. Therefore, we sustain the Examiner's

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

refusal to adopt the proposed obviousness rejection based on the
combination of LaBounty and Ogawa.

Proposed Rejection 6:  Claims 20 and 21 Anticipated by Caterpillar

*Findings of Fact*

FF5.  A.  Caterpillar discloses a demolition shear such as a scrap metal
shear (Pg. 5).  Figures 1 and 2 of Caterpillar are reproduced below.



Figure 1 of Caterpillar reproduced above shows a lateral view of a
scrap metal shear 10 with its jaws removed (Pg. 5; Fig. 1).  Figure 2 of
Caterpillar reproduced above shows a frontal, partial cross-sectional view of
the scrap metal shear of Figure 1 (Pg. 5; Fig. 2).

25

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

 B. Caterpillar discloses that scrap metal shear 10 has a housing 11 to which first jaw 13 and second jaw 14 are attached, the second jaw being pivotably mounted via swivel bearing 15 and operable via a hydraulic cylinder 16 (Pg. 6; Figs. 1 and 2).

 C. Figure 1 of Caterpillar illustrates that when the jaws of the scrap metal shear 10 is removed, the swivel bearing 15 remains pivotably connecting the first jaw 13 and the second jaw 14 together (Fig. 1).

 D. Caterpillar discloses that the first jaw 13 includes a pair of opposing lateral walls 13a having holding fixtures 19 and 20 which are used to attach the first jaw 13 to the housing 11, the holding fixture 19 including grooves 22 with receptacle section 22b in the lateral wall 13a for receiving a pin 21, 21a, and holding fixture 20 including a bore hole 23 in the lateral wall 13a for receiving a locking pin 25 (Pg. 6-7).

 E. Figure 1 of Caterpillar also illustrates that the swivel bearing 15 is mounted via lateral walls 13a (Fig. 1).

 F. Figures 1 and 2 of Caterpillar further illustrates that the lateral walls 13a are distinct structures of the first jaw 13 made as a bracket plate that is attached transversely spaced from the remainder of the first jaw which includes the teeth portion (Figs. 1 and 2).

 G. Caterpillar teaches that the holding fixtures 19 and 20 with grooves 22 and bore hole 23 in the lateral walls 13a allow for disassembly "in [a] simple fashion" by merely pulling the locking pin 25 out of the bore holes 23." (Pg. 7).

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

*Analysis*

Preliminarily, we observe that claims 20 and 21 do not require that the blades be movable relative to the bridge housing. The Requester argues that the broadest reasonable interpretation of the claims does not require two separate structures, but instead, a single structure can encompass two claim elements (App. Br. 22-23). According to the Requester, the first jaw 13 includes bridge housing 13a which engages/encases the swivel bearing 15 which corresponds to the main pivot pin recited in the claims (App. Br. 23).

In refusing to adopt the proposed anticipation rejection, the Examiner contends that Caterpillar does not disclose a bridge housing and that the lateral walls 13a of Caterpillar "are an integral portion of the jaw/blade 13" whereas the language of claims makes clear that "the bridge housing is a separate structure from the movable blades." (RAN 9).

As discussed *supra*, we do not agree with either the Examiner or the Requester as to what the limitation "bridge housing" requires and encompasses. In our view, Caterpillar does disclose a "bridge housing" as recited by the claims in that the side walls 13a are distinct, discernable structures, and the side walls 13a serves the function of allowing the jaws to "be removed from or attached to the body without the need to disengage or engage the main pivot pin from the blades, thereby providing a quick release system for attaching the tool set to the body" as recited by the claims and described in the Specification of the '489 patent (FF5 A-G). While the side walls 13a are attached to the remaining structure of the first jaw 13, we do not consider the claims to require physical independence or separation. To the extent that physical independence or separation from a jaw was the

27

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

intended meaning of the limitation, the Patent Owner has had an adequate opportunity to amend the claims accordingly (App. Br. 22).

Nonetheless, we sustain the Examiner's refusal to adopt the proposed rejection of claims 20 and 21 as being anticipated by Caterpillar. Both of these claims specifically recite "a pair of movable blades pivoted together about a main pivot pin." This limitation requires that both blades to be pivoted about the same main pivot pin. We fail to see how the device of Caterpillar can reasonably be said to disclose the first jaw 13 as pivoting together with the second jaw 14 about the swivel bearing 15. The first jaw 13 does not pivot about the swivel bearing 15 (FF5 A, B). Rather, cross brace 25 fixes first jaw 13 to the housing 11 via bore holes 23 and 24 (*see* Caterpillar Pg. 6; Figure 2). Correspondingly, we sustain the Examiner's refusal to adopt the proposed anticipation rejection based on Caterpillar.

Proposed Rejection 7: Claims 1-3, 13, 14 and 17-20 as obvious over Caterpillar and Ogawa

The Requester argues that based on Ogawa's general teaching of providing two movable blades, it would have been obvious for a person of ordinary skill in the art "to modify Caterpillar to make the blade 13 pivotable about the existing pivot pin 15 such that the blades 13 and 14 are each driven by the hydraulic cylinder via separate linkages connected to the blades. This modification would allow the pair of pivotal blades 13, 14 to be opened wider to accommodate larger objects and also allow greater force to be applied to the objects." (App. Br. 25).

28

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

The Examiner disagrees and contends that whereas the claims make clear that the bridge housing is a separate structure from the movable blades, Caterpillar fails to teach a separate bridge housing that encases or engages the main pivot pin 15 and which is detachably connected to the receiving member of the body (RAN 15). According to the Examiner, even if lateral walls 13a were considered bridge housing, "such portion 13a in Caterpillar corresponds to [stays] 4 in Ogawa. Both Caterpillar's portion 13a and Ogawa's [stays] 4 are integral with one of the movable blades and not movable relative thereto as required by the claims. Accordingly, the teachings of Ogawa would not lead one of ordinary skill in the art to modify Caterpillar to make both blades 13, 14 movable relative to the portion 13a." (RAN 15).

We agree with the Requester that these claims would have been obvious in view of the combination of Caterpillar and Ogawa. Caterpillar teaches one of ordinary skill in the art the desirability of simplifying disassembly of jaws, and discloses a mechanism for doing so in the lateral walls 13a having holding fixtures 19 and 20 (FF5 A, D-G). The lateral walls 13a, while illustrated as being attached to the remainder of the first jaw 13, are also depicted as a distinct structural portion made as a bracket plate that is attached transversely spaced, and perpendicular, to the remainder of the first jaw (FF5 A, F). The Examiner's correlation of the lateral walls 13a of Caterpillar to the stays 4 of Ogawa ignores the specific function of the lateral walls 13a in allowing for simplified disassembly of the jaws of Caterpillar (FF5 D-G), such function being absent in Ogawa.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

The Requester has also pointed to Ogawa's general teaching that providing two movable blades are known, and has articulated a rational reason for modifying Caterpillar "to make the blade 13 pivotable about the existing pivot pin 15" so as to allow the blades to be opened wider (App. Br. 25). In this regard, we further observe that pivotable mounting of the first blade 13 in Caterpillar would allow for minimizing movement of the object grasped since the object would be grasped on opposing sides thereof by moveable blades rather than a single moving blade which applies grasping force from only one side until the object abuts the non-movable blade. To the extent it can be argued that Ogawa specifically discloses buckets rather than blades, Ogawa is in the same field of endeavor as the device of Caterpillar, and Ogawa also specifically discloses the clasping function (FF3 A; *see also* Fig. 4b) which is an essential function of the device of Caterpillar. Ogawa also specifically discloses the provision of wide range of angular movement (FF3 A).

Thus, it would have been obvious to one of ordinary skill in the art to apply the teaching of Ogawa with respect to articulation of both grasping members and wide range of angular movement to thereby modify Caterpillar so that the first jaw 13 with the teeth thereon also pivots about the swivel bearing 15 like second jaw 14, while also maintaining the simplified mounting and disassembly via the lateral walls 13a with their holding fixtures 19, 20 so that the jaws can be disassembled in a simple manner as specifically taught therein (FF5 D). In our view, it would be apparent and within the skill of one of ordinary skill in the art that such modification to the device of Caterpillar may be attained, and within his/her skill to, for

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

example, provide another mounting structure like the lateral walls 13a, or alternatively, making the teeth portion of the first jaw 13 to be separately mounted to the swivel bearing 15, as taught by Ogawa.  While the above suggested modification to Caterpillar would entail design and structural changes, we observe that it is not necessary that the inventions of the references must be physically combinable, without change, to render obvious the invention under review.  *In re Sneed*, 710 F.2d 1544, 1550 (Fed. Cir. 1983); *see also In re Keller*, 642 F.2d 413, 425 (CCPA 1981) ("[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; nor is it that the claimed invention must be expressly suggested in any one or all of the references. Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art.").

As to claim 20, the Examiner states that Caterpillar and Ogawa fail to disclose a bridge housing that have an arcuate support surface to mate with a complementary arcuate engaging surface of the receiving member as required by the claim (RAN 15-26).  However, we observe that Caterpillar illustrates that the receptacle section 22b in the lateral walls 13a as having an arcuate surface which receives a complementary arcuate pin 21, 21a (FF5 A, D).  Thus, in view of the above, the Examiner's refusal to reject independent claims 1 and 17-20 as obvious in view of the combination of Caterpillar and Ogawa is reversed.

The Requester also further requests the reversal of the Examiner's refusal to reject dependent claims 2-3 and 13-14 that ultimately depend from independent claim 1 (App. Br. 25).  The Requester contends that the

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

receptacle section 22b and arcuate pin 21a satisfy the recited limitations
(App. Br. 25). Indeed, the limitations of claims 2 and 3 generally
correspond to the arcuate support surface limitation of claim 20, and thus,
are obvious for the reason already discussed. As to claim 13 which requires
a single hydraulic cylinder, this feature is clearly disclosed in Caterpillar and
Ogawa (*see* FF3 A, FF5 A-B).

Claim 14 recites "further including for each blade a separate linkage
connected to that blade and adapted to be detachably connected to the at
least one hydraulic cylinder." The Requester contends that this limitation is
disclosed in Ogawa by separate linkages 15, 16 (App. Br. 25). We agree
with the Requester that such a configuration using separate linkage to
operate two pivoting blades would have been obvious to one of ordinary
skill in the art, especially in view of Ogawa which specifically discloses
such separate linkages for actuating the pivoting blades (*see* FF3 A).

Thus, in view of the above, the Examiner's refusal to adopt the
Requester's proposed rejection of claims 1-3, 13-14, and 17-20 as obvious in
view of the combination of Caterpillar and Ogawa is REVERSED and
denominated as a NEW GROUND OF REJECTION pursuant to our
authority under 37 C.F.R. § 41.77(a) & (b).

Proposed Rejection 8: Claims 4-12, 15-16 and 21 Obvious Over
Caterpillar, Ogawa and Clark

The Requester further appeals the Examiner's refusal to adopt the
proposed obviousness rejection of claims 4-12, 15-16 and 21 as obvious
over the combination of Caterpillar, Ogawa and Clark (App. Br. 27-29).

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

The Examiner refused to adopt the Requester's proposed rejection of these claims stating that Clark "fail[s] to cure the deficiencies of Caterpillar and Ogawa" discussed *supra* (RAN 16).  However, as discussed, we disagree with the Examiner's analysis as to obviousness of various claims based on the combination of Caterpillar and Ogawa.  Hence, the Examiner's refusal to reject claims 4-12, 15-16 and 21 as being obvious over the combination of Caterpillar, Ogawa and Clark is REMANDED for reconsideration in view of our reversal of the Examiner's refusal to adopt Proposed Rejection 7.

<u>Proposed Rejection 9: Claims 20 and 21 Anticipated by Drott</u>

*Findings of Fact*

FF6.  A.  Drott discloses a material handling apparatus for removing obstructions (Title; Pg. 1, col. 1, ll. 1-4).  Figures 1 and 3 of Drott are reproduced below.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2



Figure 1 of Drott reproduced above is a side elevation view of the material handling apparatus including pusher blade 25 and gripper and scoop member 42 pivotably connected thereto via pin 47, as well as slotted bracket 54 to which support 51 is connected (Pg. 1, col. 1, ll. 36-37, col. 2, ll. 20-33; Pg. 2, col. 1, ll. 35-51, 54-65; Fig. 1). Figure 3 of Drott reproduced above shows a detailed view of parts of the apparatus (Pg. 1, col. 1, ll. 39-40; Fig. 3).

B.  Drott illustrates the support 51 being connected to the pusher blade 25 via pin 52, and discloses that "[t]he slotted bracket 54 compensates or provides for relative movement between the support 51 for the cylinder

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

50 and the tiltable frame or arm 23 with which it is connected so as to allow

independent tilting movement of each arm 23, so that the scoop member 42

may be tilted vertically." (Pg. 2, col. 1, ll. 54-65; col. 2, ll. 16-22; Fig. 1).

*Analysis*

The Examiner refuses to reject the claims stating that the structure 25,

relied upon by the Requester as the "bridge housing," constitutes a blade,

and thus, does not satisfy the claims because the language of claims makes it

clear that the bridge housing is a separate structure (RAN 10). The

Requester argues that the Examiner erred in refusing to reject claims 20 and

21 as being anticipated by Drott asserting that Drott discloses a pair of

movable blades 25, 42 pivoted about pin 47, and that the limitation "bridge

housing" is satisfied by the "back frame of blade 25" which engages the pin

47 (App. Br. 29).

While we do not necessarily agree with the Examiner that the claims

require the bridge housing to be a separate structure as discussed *supra*, we

nonetheless find that Drott fails to anticipate these claims. These claims

clearly require "a pair of movable blades pivoted together about a main pivot

pin." While the disclosed device of Drott includes a pusher blade 25 and pin

47, there is no disclosure that pusher blade 25 pivots about pin 47. In

particular, whereas Drott discloses a slotted bracket 54 which enables

vertical tilting of the scoop member 42 (FF6 B), this does not mean that the

pusher blade 25 pivots about pin 47. Indeed, the end of the pusher blade 25

opposite of the pin 47 is secured to the arm 23 while the pin 47 is not

mounted to any stationary structural member so as to allow for the pusher

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

blade to pivot about the pin 47 (FF6 A; *see also* Fig. 1). Hence, in Drott, the pin 47 moves in conjunction with movement of the pusher blade 25. To any extent that the pusher blade 25 can be said to pivot, it pivots about pin 52, not pin 47 about which only blade 42 pivots. Correspondingly, Drott fails to teach a "main pivot pin" about which both blades pivot. Therefore, because Drott fails to disclose "a pair of movable blades pivoted together about a main pivot pin," we find that it does not anticipate claims 20 and 21.

ORDERS

The Examiner's decisions with respect to the following Proposed Rejections of the Requester are AFFIRMED-IN-PART as follows:

1.    Refusal to reject claims 1-21 as being anticipated by De Gier is AFFIRMED.

2.    Refusal to reject claims 1, 2, 4-8 and 10-19 as being anticipated by Ogawa is AFFIRMED.

3.    Refusal to reject claims 1-3 and 17-20 as being anticipated by LaBounty is AFFIRMED.

4.    Refusal to reject claims 4-12 and 21 as being unpatentable over LaBounty in view of Weisgerber is AFFIRMED.

5.    Refusal to reject claims 13-14 as being unpatentable over LaBounty in view of Ogawa is AFFIRMED.

6.    Refusal to reject claims 20 and 21 as being anticipated by Caterpillar is AFFIRMED.

7.    Refusal to reject claims 1-3, 13-14, and 17-20 as being unpatentable over Caterpillar in view of Ogawa is REVERSED and

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

denominated as a NEW GROUND OF REJECTION pursuant to our authority under 37 C.F.R. § 41.77(a) & (b).

8.    Refusal to reject claims 4-12, 15-16 and 21 as being unpatentable over Caterpillar in view of Ogawa and Clark is REMANDED for further consideration.

9.    Refusal to reject claims 20 and 21 as being anticipated by Drott is AFFIRMED.


## AFFIRMED-IN-PART; 37 C.F.R. § 41.77(b); REMANDED


This decision contains new grounds of rejection pursuant to 37 C.F.R. § 41.77(b) which provides that "[a]ny decision which includes a new ground of rejection pursuant to this paragraph shall not be considered final for judicial review."  Correspondingly, no portion of the decision is final for purposes of judicial review.  A requester may also request rehearing under 37 C.F.R. § 41.79, if appropriate, however, the Board may elect to defer issuing any decision on such request for rehearing until such time that a final decision on appeal has been issued by the Board.

For further guidance on new grounds of rejection, see 37 C.F.R. § 41.77(b)-(g).  The decision may become final after it has returned to the Board.  37 C.F.R. § 41.77(f).

37 C.F.R. § 41.77(b) also provides that the Patent Owner, WITHIN ONE MONTH FROM THE DATE OF THE DECISION, must exercise one of the following two options with respect to the new grounds of rejection to avoid termination of the appeal as to the rejected claims:

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

(1) *Reopen prosecution.* The owner may file a response requesting reopening of prosecution before the examiner. Such a response must be either an amendment of the claims so rejected or new evidence relating to the claims so rejected, or both.

(2) *Request rehearing.* The owner may request that the proceeding be reheard under § 41.79 by the Board upon the same record. …

Any request to reopen prosecution before the examiner under 37 C.F.R. § 41.77(b)(1) shall be limited in scope to the "claims so rejected." Accordingly, a request to reopen prosecution is limited to issues raised by the new ground(s) of rejection entered by the Board. A request to reopen prosecution that includes issues other than those raised by the new ground(s) is unlikely to be granted. Furthermore, should the patent owner seek to substitute claims, there is a presumption that only one substitute claim would be needed to replace a cancelled claim.

A requester may file comments in reply to a patent owner response. 37 C.F.R. § 41.77(c). Requester comments under 37 C.F.R. § 41.77(c) shall be limited in scope to the issues raised by the Board's opinion reflecting its decision to reject the claims and the patent owner's response under paragraph 37 C.F.R. § 41.77(b)(1). A newly proposed rejection is not permitted as a matter of right. A newly proposed rejection may be appropriate if it is presented to address an amendment and/or new evidence properly submitted by the patent owner, and is presented with a brief explanation as to why the newly proposed rejection is now necessary and why it could not have been presented earlier.

Appeal 2012-007030
Reexamination Control 95/001,352
Patent US 7,121,489 B2

Compliance with the page limits pursuant to 37 C.F.R. § 1.943(b), for all patent owner responses and requester comments, is required.

The examiner, after the Board's entry of a patent owner response and requester comments, will issue a determination under 37 C.F.R. § 41.77(d) as to whether the Board's rejection is maintained or has been overcome. The proceeding will then be returned to the Board together with any comments and reply submitted by the owner and/or requester under 37 C.F.R. § 41.77(e) for reconsideration and issuance of a new decision by the Board as provided by 37 C.F.R. § 41.77(f).

ack

cc:

Patent Owner:
THE WEBB LAW FIRM, P.C.
ONE GATEWAY CENTER
420 FT. DUQUESNE BLVD, SUITE 1200
PITTSBURGH, PA 15222

Third Party Requestor:
HARNESS, DICKEY & PIERCE, P.L.C.
P.O. BOX 828
BLOOMFIELD HILLS, MI 48303